[Civil No. 969.   Filed March 22, 1907.]

[89 Pac. 496.]

## CLARA A. KINNEY, Defendant and Appellant, v. J. C. LUNDY, Plaintiff and Appellee.

1. MINES AND MINERALS—RELOCATION—NOTICE—"VOID" HELD "VOID-ABLE"—REV. STATS. ARIZ. 1901, PAR. 3241—CONSTRUED.—Paragraph 3241, *supra,* after providing for the manner in which the relocation of a forfeited or abandoned lode claim shall be made, provides that a new location monument shall be erected, and "the location notice shall state if the whole or any part of the new location is located as abandoned property, else it shall be void." *Held,* that the word "void" is to be construed as voidable, and that a location notice which failed to state that the claim was located in whole or in part as an abandoned claim might be amended so as to contain this statement in compliance with the requirements of the statutes, where there have been no intervening rights acquired.

2. FINDING—ANNUAL WORK—SUFFICIENCY.—Lundy brought suit against Kinney to quiet title to the "Little May" mining claim, which he had relocated on April 1, 1903, the relocation notice failing to comply with the statutes, and he having filed an amended relocation notice in 1905. Defendant claimed title to the same under a prior location of the second day of January, 1896, the same property being then located as the "Rosaline No. 2," said claim being one of a group of seven claims. Kinney had failed to perform the assessment work on the "Rosaline No. 2" for 1902, and had not begun operations on the same prior to relocation by Lundy and assumption of work by him in 1903. Kinney testified without objection that the "Rosaline No. 2" was one of seven claims, said claims being contiguous and forming a group. There was sufficient showing made by witnesses of Kinney to show that in 1902 there was sufficient work done on one of the claims of the Rosaline group to constitute the necessary annual labor for that year for all the claims in the group, if such work could properly be applied to all such claims, and this was also true in the years 1903 and 1904; *held,* that Kinney was entitled to a finding of the court upon the question whether there was sufficient annual work performed upon the group of claims for the years 1902, 1903 and 1904, prior to the filing of the amended location notice by Lundy, and whether or not the work, if so done, was applicable to the claim in controversy.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Gila. Frederick S. Nave, Judge. Reversed and remanded for new trial.

The facts are stated in the opinion.

A. C. Baker, for Appellant.

Section 3241, Revised Statutes of 1901, provides for certain requirements in making a relocation of abandoned property. In this instance the meaning of the legislature was that unless these requirements were complied with, a location notice not including them should be void. And so it has been held in *Cunningham* v. *Pirrung*, 9 Ariz. 288, 80 Pac. 329; *Moffat* v. *Blue River Gold Excavating Co.*, 33 Colo. 142, 80 Pac. 139.

Evidence as to the amount paid for assessment work is admissible. *McCormick* v. *Parnatt*, 80 Pac. 1044. It is also held that evidence to show that the amount of assessment work performed upon a mining claim of a certain value is insufficient to show an abandonment. Abandonment is a question of intent. *Moffat* v. *Blue River Gold Excavating Co.*, 80 Pac. 139. As to the effect of the assessment work done by the appellant upon claim No. 5 to apply upon all the other claims in the group, it has been held that work done upon a claim, or upon one claim in a group of claims with intention to develop and apply upon all is sufficient. This principle has been held in the cases: *Wilson* v. *Triumph Cons. Min. Co.*, 19 Utah, 66, 75 Am. St. Rep. 718, 56 Pac. 300; *Klopenstine* v. *Hays*, 20 Utah, 45, 57 Pac. 712; *Fissure Min. Co.* v. *Old Susan Min. Co.*, 22 Utah, 438, 63 Pac. 587.

George R. Hill, and E. J. Edwards, for Appellee.

Briefly stated, the theory of appellee is as follows: That appellant did no assessment work within the boundaries of Rosaline No. 2 in 1902 or 1903. This is not disputed. Upon appellant, then, rested the burden of showing that representation work had been done elsewhere in such manner that it would tend to develop the Rosaline No. 2, prior to location by appellee. Lindley on Mines, sec. 630, p. 1169; *McCormick* v. *Baldwin*, 104 Cal. 227, 37 Pac. 903; *Jackson* v. *Roby*, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; *Sherlock* v. *Leighton*, 9 Wyo. 297, 63 Pac. 580, 63 Pac. 934; *Hall* v. *Kearny*, 18 Colo. 505, 33 Pac. 373; *Justice Min. Co.* v. *Barclay*, 82 Fed. 554.

The right to amend a notice or location, or both, has long been recognized, and exists independently of statutory regulations. Lindley on Mines, p. 717; Snyder on Mines, sec. 432; *McEvoy* v. *Hyman*, 25 Fed. 596; *Duncan* v. *Fulton*, 15 Colo. App. 140, 61 Pac. 246; *Strepy* v. *Stark*, 7 Colo. 614, 5 Pac. 111.

And statutes providing for such amendments are nearly declaratory of existing rights. *Thompson* v. *Spray*, 72 Cal. 528, 14 Pac. 182. And are remedial, and should be liberally construed. Our statute, paragraph 3238, is broad in its terms. It provides that "location notices may be amended at any time." In other words, that "location notices" at any time, for any purpose, may be amended. It frequently happens that a "location notice" is said to be "void." *McEvoy* v. *Hyman,* 25 Fed. 596; *Strepy* v. *Stark,* 7 Colo. 614, 5 Pac. 111. That is to say, it may fail in some particular, either as to description, statutory requirements, reference to natural objects, or in other essentials, but, in the absence of intervening rights, and often with intervening rights, the courts hold them to be remedial by amendment. The current and weight of authority is to that effect. *Strepy* v. *Stark, supra; McEvoy* v. *Hyman, supra; Duncan* v. *Fulton,* 15 Colo. App. 140, 61 Pac. 244; *Frisholm* v. *Fitzgerald,* 25 Colo. 290, 53 Pac. 1109; *Morrison* v. *Regan,* 8 Idaho, 291, 67 Pac. 960; *Jordan* v. *Schuerman,* 6 Ariz. 79, 53 Pac. 579; *McGinnis* v. *Egbert,* 8 Colo. 41, 5 Pac. 652.

Appellant contends that the word "void," as used in the statute, makes the amendment of the location notice impossible. If the courts use the words "void" and "voidable" interchangeably, and say "void" when the word "voidable" is more exact, it is quite possible that the legislature may use the word "void" in the same way. This has been so held.by the supreme court of the United States in *Ewell* v. *Daggs,* 108 U. S. 148, 2 Sup. Ct. 408, 27 L. Ed. 682. As used in contracts, legal writings and statutes, the word may mean absolutely and under all conditions void, or it may mean only voidable under certain conditions. *Hogan* v. *Akin,* 181 Ill. 448, 55 N. E. 137. Even though a statute uses the words "absolutely void," it may be construed as voidable only. *Tolbert* v. *Horton,* 31 Minn. 518, 18 N. W. 647. It frequently occurs that the word "void" is used in a statute not in the strict literal sense of the word, but as meaning voidable. 29 Ency. of Law, 2d ed., 1068, and cases cited. The word "void," as used in paragraph 3241, should be construed with reference to the subject matter and in the light of precedent and custom, and can only mean voidable; hence the notice is amendable.

KENT, C. J.—Lundy brought suit in the court below against Clara A. Kinney to quiet his title to a mining claim

in Gila county known as the "Little May," alleging that he had duly located the claim on April 1, 1903. The defendant filed an answer and cross-complaint, alleging that the premises covered by the plaintiff's location were not at the time of his location unoccupied public domain of the United States, but that the property covered by the Little May location had theretofore, and on the second day of January, 1896, been duly located by one Alfred Kinney as a claim known as the "Rosaline No. 2," which claim had thereafter been duly transferred to defendant by deed, and that since the date of the location of said Rosaline No. 2 mining claim she had expended thereon the sum of $100 for annual assessment work for each and every year thereafter, and that neither at the time of the location of the claim by Lundy, nor at any time thereafter, had the said claim been abandoned or forfeited, or subject at any time to relocation; and prayed that her title to said claim be quieted as against Lundy. To the cross-complaint so filed the plaintiff filed an answer denying the performance of the annual assessment work upon the claim for the year 1902, and denying any resumption of labor upon said claim prior to plaintiff's location. Upon the issues so formed by the pleadings the case came to trial before the court, sitting without a jury, and upon the evidence the court found that prior to 1903 the defendant was the owner of the Rosaline No. 2 mining claim; that the Little May mining claim and the Rosaline No. 2 mining claim covered substantially the same ground; that the defendant had failed to do the annual assessment work on the Rosaline mining claim for the year 1902, and had not resumed such work thereon prior to plaintiff's relocation thereof in April, 1903; that on April 1, 1903, the plaintiff and one Bennett duly entered upon the premises and located the same as the Little May mining claim, and duly completed such location, and thereafter did the annual work required by law upon said claim for the year 1904; that thereafter, and on the 27th of May, 1905, the plaintiff amended his original location notice to make it conform to the provisions of paragraph 3241 of the Revised Statutes of Arizona, by reciting therein that the Rosaline No. 2 mining claim (Little May No. 1) was relocated in whole as abandoned property; that subsequent to such location of the premises by the plaintiff, and prior to the filing of said amended notice, defendant had acquired no rights in or to said premises, either by relocation or by doing the annual

assessment work as required by law; and as a conclusion of law from these findings the court held that on the first day of April, 1903, the premises were subject to relocation, and that the plaintiff's location was in all respects valid, and the defendant had no right, title, or interest in or to the premises; and thereupon entered judgment quieting the title of the plaintiff as against the defendant. From this judgment, and from the denial of a motion for a new trial, the defendant, Kinney, has appealed to this court.

It appears from the testimony of the plaintiff that when he located the claim in May, 1903, he had knowledge of the fact that the ground had theretofore been occupied and taken possession of as a mining claim. The location notice introduced by him in evidence did not contain any statement that the claim so located by him was located in whole or in part as an abandoned claim. Over objection by the defendant, the plaintiff introduced an amended location notice dated May 27, 1905, and filed for record that day, which amended notice of location contained the statement that the whole of the claim was located as abandoned property, and that such amended location notice was filed without any waiver of rights in and to said premises, and for the purpose of making more specific and certain the original location notice. The appellant has assigned as error the ruling of the court in allowing the introduction in evidence of this amended location notice, on the ground that under the statute the original location notice was void and incapable of amendment.

Our statute provides (Rev. Stats. 1901, par. 3241): "The relocation of forfeited or abandoned lode claims shall only be made by sinking a new discovery shaft and fixing the boundary in the same manner and to the same extent as is required in making an original location; or the relocator may sink the original shaft ten feet deeper than it was at the date of the commencement of such location, and shall erect new or make the old monuments the same as originally required. In either case a new location monument shall be erected, and the location notice shall state if the whole or any part of the new location is located as abandoned property, else it shall be void." We have heretofore held that it is incumbent upon a person making location of an abandoned or forfeited claim to state in his notice that the same is located in whole or in part as abandoned property. *Cunningham* v. *Pirrung,* 9 Ariz. 288, 80 Pac. 329. The question now raised by this as-

signment of error is whether or not a location notice that does not contain such recital is absolutely void, or whether the omission of such recital may be cured by an amended.location notice subsequently filed.

In 1895 the legislature passed an act concerning mines, in which it provided that in making a relocation of a forfeited or abandoned lode claim the location notice must state if the whole or any part of the new location is located as abandoned property. No penalty for a failure to make such statement was provided. In 1901 the legislature, in the revision of the laws in that year, re-enacted this requirement, with the additional clause added thereto, to wit, "else it shall be void." Upon the meaning and construction to be placed upon this word "void," as here used, depends the determination of the question before us. In the strictest sense "void" means that which has no force and effect. The Century Dictionary gives the following as its definition specifically, in law: "Without legal efficacy; incapable of being enforced by law; having no legal or binding force." Unquestionably, if we are to give here effect to the strict and primary meaning of the word, we must hold that the location notice of an abandoned or forfeited claim which omits to state the requirement of the statute is incapable of subsequent amendment, since, if it was without legal efficacy, or was without legal or binding force, it was a complete nullity, void *ab initio,* and gave no basis for amendment. But the courts very generally have refused to accept this narrower, stricter construction as the one to be adopted as giving proper effect to the intent in the minds of the person or body making use of the word in legal documents or enactments, and have frequently construed it as used in effect in the sense of voidable only, rather than void, where such construction seems more nearly to conform to the probable intent in its use. Thus in a case in New Hampshire the supreme court said: "This term 'void' is perhaps seldom, unless in a very clear case, to be regarded as implying a complete nullity, but is to be taken in a legal sense subject to large qualifications, in view of all the circumstances calling for its application and the rights and interests to be affected in a given case." *Brown* v. *Brown,* 50 N. H. 538.

In a case in Indiana, construing a statute which provided that a married woman should not enter into any contract of suretyship, and that such contract as to her should be void, the court said: "Much confusion has been produced and is

persistently perpetuated by the frequent use of the word 'void,' both in the statutes and the decided cases, when the word 'voidable' would have been more appropriate, and hence the word 'void' has often to be construed as in effect meaning voidable only." *Bennett* v. *Mattingly*, 110 Ind. 197, 10 N. E. 299, 11 N. E. 792.

In an act incorporating a bridge company in New York, a forfeiture of the charter was provided in a certain event in the following language: "All rights and privileges granted hereby shall be null and void." The supreme court, in construing this clause, said: "It cannot be said that the words 'shall be null and void' disclose the legislative intent to make this clause self-executing. The words 'null and void,' as used in this connection, clearly mean voidable. The word 'void' is often used in an unlimited sense, implying an act of no effect, a nullity *ab initio* (*Inskeep* v. *Lecony*, 1 N. J. L. 112); in the case at bar it was not so employed, but rather in its more limited meaning." *New York & Long Island Bridge Co.* v. *Smith*, 148 N. Y. 540, 42 N. E. 1088.

. Missouri has thus commented upon the use of the word: "It is, perhaps, unfortunate that we are not supplied with a term of more precision than the word 'void,' a word more often used to point out what may be avoided by those interested in doing so than to indicate an absolute nullity—a proceeding or act to be disregarded on all occasions. Of the latter class we might instance a common-law judgment rendered by a town council or county court, or a conveyance by a stranger to the title while the real owner is in possession under a record title. But many things are called void which are not absolutely so, and, as to mankind generally, are treated as valid. They can only be called relatively void." *Kearney* v. *Vaughan*, 50 Mo. 284.

A Wisconsin statute provided that every conveyance or assignment of real estate, under certain conditions, "shall be void." The supreme court of Wisconsin held the word "void," as there used, meant "voidable," only. *French Co.* v. *Theriault*, 107 Wis. 627, 81 Am. St. Rep. 856, 83 N. W. 927, 51 L. R. A. 910. And in an earlier case the same court said: "Probably no words are more inaccurately used in the books than 'void' and 'voidable.' Statutes not unfrequently declare acts void which the tenor of their provisions necessarily makes voidable only. Perhaps the best excuse made

for such inaccuracy is that of Parker, C. J., cited and adopted by this court: 'Whatever may be avoided may, in good sense, to this purpose, be called void, and the use of the term "void" is not uncommon in the language of statutes and of courts. But in regard to the consequences to third persons, the distinction is highly important, because nothing can be founded upon what is absolutely void; whereas, from those which are only voidable, fair titles may flow. These terms have not always been used with nice discrimination; indeed, in some books there is a great want of precision in the use of them.' " *Bromley* v. *Goodrich*, 40 Wis. 131, 22 Am. Rep. 685.

The supreme court of Iowa, in passing upon the proper construction to be given to the word, and citing a large number of cases to the same effect, said: "The word 'void' has, with lexicographers, a well-defined meaning: 'Of no legal force or effect whatever; null and incapable of confirmation or ratification.' Webster's Dictionary. But it is sometimes, and not unfrequently, used in enactments by the legislature, in opinions by courts, in contracts by parties and in arguments by counsel, in the sense of voidable; that is, 'capable of being avoided or confirmed.' Id. The word 'void,' when used in any of these instruments, will therefore be construed in the one sense or the other, as shall best effectuate the intent in its use, which will be determined from the whole of the language of the instrument and the manifest purpose it was framed to accomplish." *Van Shaack* v. *Robbins*, 36 Iowa, 201.

In Kansas the supreme court has said: "We do not understand that courts, by their use of the term 'void,' always mean that utter negativeness which is the equivalent of nonexistence, but they more often mean that which, relatively to persons, circumstances, conditions, or forms of action may be treated as though it were nonexistent. In this latter sense there is little distinction between it and the word 'voidable.' Really, as often used in the law, there is an interchangeability of meaning between the two words." *Frazier* v. *Jeakins*, 64 Kan. 615, 68 Pac. 24, 57 L. R. A. 575.

In Michigan, in discussing a statute which provided that certain things should not be "legal or valid or of any force and effect," the supreme court said: "These are strong and seem very imperative words, and if full effect is given to them it may be difficult to support this mortgage. But we are not hastily to conclude that words thus apparently imperative are to be given a literal interpretation and enforced accordingly.

Courts often speak of acts and contracts as void when they
mean no more than that some party concerned has a right to
avoid them.  Legislatures sometimes use language with equal
want of exact accuracy, and, when they say that some act or
contract shall not be of any force or effect, mean perhaps no
more than this: that at the option of those for whose benefit
the provision was made it shall be voidable, and have no force
or effect as against his interests." *Beecher* v. *Marquette &*
*P. R. M. Co.*, 45 Mich. 103, 7 N. W. 695.

In construing a usury statute declaring a contract to be
"void and of no effect," the supreme court of the United
States has said: "But these words are often used in statutes
and legal documents, such as deeds, leases, bonds, mortgages,
and others, in the sense of voidable merely—that is, capable
of being avoided—and not as meaning that the act or trans-
action is absolutely a nullity, as if it never had existed, in-
capable of giving rise to any rights or obligations under any
circumstances." *Ewell* v. *Daggs,* 108 U. S. 148, 2 Sup. Ct.
408, 27 L. Ed. 682.

Many other decisions of like tenor might be cited, but the
foregoing are sufficient to show that the courts generally recog-
nize that it is the common practice of both legislatures and
courts to make use of the word "void" as interchangeable
with, and as having the meaning of, "voidable," and with
substantially the same force and effect; and that it is not only
proper, but that it is the duty of a court, to interpret the
meaning of the word either strictly or more liberally as the
intent shall appear.  It is not the policy of the law to pre-
vent the miner who has in good faith gone upon the public
domain and taken up a mining claim and expended his money
thereon, but who through ignorance of the requirements of
the law, or through honest mistake, has failed to comply with
such requirements, to be debarred from correcting such mis-
takes, or from supplying such omissions; but it is rather the
policy of the law to give a locator an opportunity to correct
his record whenever defects may be found in it, where no
other rights have intervened.  *McEvoy* v. *Hyman* (C. C.), 25
Fed. 596.  In recognition of this, our legislature has provided
in paragraph 3238 of the Civil Code as follows: "Location
notices may be amended at any time and the monuments
changed to correspond with the amended location; provided,
that no change shall be made that will interfere with the
rights of others."  We do not think that the legislature, in

providing that the location notice of a claim located as an abandoned or forfeited claim should be void unless it contained the required statement, intended to use the word "void" in its restricted and pure meaning, but rather in the larger sense of voidable, and that under the statute such a location notice that is defective by reason of noncompliance with such requirement may be amended by the filing of an amended notice containing the omission, provided rights of others have not intervened, and that such amended certificate will relate back to the date of the first location, and will cure the defects of such prior location, except as to any intervening or pre-existing rights of others; the effect of the statute and of the filing of such amended location notice being to operate to cure the defect and omission of the former location notice, and to put the locator, if no rights of others have intervened, in the same position as he would have been if the former defect had not existed, but where others in the meantime have initiated or maintained rights to the claim, such attempt to so cure the defect will be unavailing. *Morrison* v. *Regan,* 8 Idaho, 291, 67 Pac. 955; *Strepy* v. *Stark,* 7 Colo. 614, 5 Pac. 111; *Van Zandt* v. *Argentine Min. Co.* (C. C.), 8 Fed. 725, 2 McCrary, 159; *Frisholm* v. *Fitzgerald,* 25 Colo. 290, 53 Pac. 1109. We hold, therefore, that the district court was right in the construction it gave to the statute in question.

But while in our opinion the trial court was right in thus admitting in evidence this amended notice of location, and that by such amendment the plaintiff's original location notice might be validated, we think the evidence in this case did not sustain the findings and the judgment. The plaintiff on his part clearly showed the performance of the necessary acts to constitute a valid location of his claim, provided the ground was at the time of such location unoccupied public domain subject to location by him. The evidence of the plaintiff further clearly showed that no annual labor or assessment work was done upon the claim Rosaline No. 2 by the defendant for the year 1902, and, although on this point there is some conflict in the testimony, we think there was sufficient evidence to warrant the finding of the court that the necessary amount of annual labor had not been done by the defendant on this claim itself prior to the filing of the amended location notice of the plaintiff in May, 1905; but the appellant contends that the court should have taken into consideration the work performed by the defendant upon certain contiguous claims

owned by her, as such work was done for the benefit of all the claims, including the Rosaline No. 2, and was sufficient in amount, both for the year 1902 and for the years 1903 and 1904, prior to the filing of the amended location notice of the plaintiff. This contention of the appellant, we think, is well founded. The court below made no finding of fact with respect to this work done on the group, outside of the Rosaline No. 2, and in any event we think the defendant was entitled to a finding of fact with respect to this work and its applicability and nonapplicability to the Rosaline No. 2 claim. The court below in its decision says: ''There is no legal evidence to show that the defendant, Mrs. Kinney, ever had any lawful, valid location of any other claims than the Rosaline No. 2. There being no evidence that she performed her annual labor prior to 1902, she performed no annual labor that can be applied to claim No. 2, and judgment of necessity must be entered against the defendant, both on the complaint and on the cross-complaint.''

It is evident from a reading of the testimony in the case that the trial court was of the opinion that inasmuch as no evidence had been adduced by Mrs. Kinney of the steps taken by the locator to initiate and acquire his rights to these other claims in the group, and since the location notices of such claims were not introduced in evidence by the defendant, no legal title in her to these other claims had been shown sufficient to warrant the conclusion that work done upon these claims might be applied to the Rosaline No. 2. In this we think the trial court erred. The question before the court was whether or not the assessment work had been performed by the defendant. The validity of the title of Mrs. Kinney in the Rosaline No. 2 was admitted by the location of the claim by the plaintiff as an abandoned claim, and neither as to this claim nor the other claims in the group was the issue the validity of the title thereto. Mrs. Kinney testified, without objection, that she had owned since 1896 certain mining claims known as the ''Rosaline Nos. 1, 2, 3, 4, 5, 6, and 7''; that these claims (with the exception of claim No. 7) were contiguous and formed a group. She testified she purchased the claims from Kinney, who was the locator, and a deed was received in evidence from Kinney to her specifying in detail these claims by name, and giving the dates of the recording of the various location notices thereof in the proper office, and describing them as the ''Rosaline group, consisting of

seven mining claims.'' Two of the witnesses on the part of the plaintiff testified that Mrs. Kinney owned several claims there of the same name adjacent, and the testimony is replete with questions and answers showing that these claims were in a contiguous group owned and operated in common. We think there was in the record sufficient testimony of the ownership of the claim in Mrs. Kinney to raise the question whether assessment work done on one or another of these claims might properly apply for the benefit of the whole group, and that it was not incumbent or necessary for the defendant to make proof of the formal steps taken in acquiring title to these claims by the locator, or introduce in evidence the location notices of these claims, under the issues in this action.

The testimony of the defendant's witnesses shows that in 1902 there was sufficient work done on one of the claims in this group to constitute the necessary annual labor for that year for all the claims in the group, if such work could properly be applied to all such claims; and this is also true of the years 1903 and 1904; and this testimony of the defendant is practically uncontradicted by the testimony of the plaintiff's witnesses. The testimony on the part of the defendant as to whether or not this work so done could properly be applied to the claim No. 2 (the claim in dispute), as being work that was done on a group for the benefit of all, and properly so done, is less convincing, and is to some extent contradicted by the testimony of the plaintiff's witnesses as to the character of the soil between the claim in dispute and the claim where the greater portion of the work was done; but we think the defendant was entitled to a finding of the court below upon the question whether there was a sufficient amount of annual work performed upon his group of claims for the years 1902, 1903, and 1904 prior to the filing of the amended location notice by the plaintiff, and to a finding whether or not the work, if so done, was applicable to the claim in controversy. We think this was a material issue involved, and necessary to the proper determination of the action.

The judgment of the district court is reversed, and the case remanded for a new trial.

SLOAN, DOAN, and CAMPBELL, JJ., concur.