[Civil No. 2296.   Filed September 16, 1925.]

[239 Pac. 514.]

## THOMAS SMART, Appellant, v. W. F. STAUNTON and C. V. HOPKINS, Appellees.

1. APPEAL AND ERROR—APPEAL NOT DISMISSED BECAUSE RECORD WAS NOT AUTHENTICATED BY CLERK OF LOWER COURT.—An appeal will not be dismissed because of lack of former authentication of record by clerk of lower court, where procedure outlined in Civil Code of 1913, paragraph 1258, is followed.

2. APPEAL AND ERROR—FINDINGS MUST BE CONSIDERED WHEN THEY ARE PART OF RECORD.—Where clerk of superior court was directed to send up findings under Civil Code of 1913, paragraph 1258, they became part of record, and must be considered even though the evidence is not preserved.

3. APPEAL AND ERROR—INSUFFICIENCY OF FINDINGS CAN BE RAISED ON APPEAL WHETHER SPECIFIED BY MOTION FOR NEW TRIAL OR NOT.—Failure to specify by motion for new trial that findings are insufficient does not preclude raising point on appeal, since Civil Code of 1913, paragraph 1231, grants such right.

4. APPEAL AND ERROR—APPELLANT MAY NOT ATTACK FINDINGS AS UNSUPPORTED WHERE EVIDENCE NOT PRESERVED.—Where appellant did not preserve the evidence, he may not attack the findings as unsupported thereby.

5. APPEAL AND ERROR—SUPREME COURT CANNOT CONSIDER ASSIGNMENT THAT LOWER COURT ERRED IN MODIFYING FINDINGS WHERE EVIDENCE IS NOT BEFORE IT.—Supreme Court cannot consider assignment that it was error for lower court to modify findings where the evidence is not before it.

---

4.   See 2 R. C. L. 135.

6. MINES AND MINERALS—FAILURE TO PROPERLY POST AMENDED LO-' CATION NOTICES ACTS AS FORFEITURE.—A failure to properly post notices, as provided in Civil Code of 1913, paragraphs 4028, 4029, 4032, in making amended location of mining property, operates as a forfeiture when the rights of others intervene.

7. MINES AND MINERALS—ATTEMPT TO RELOCATE MINING CLAIM ON THEORY OF FAILURE TO DO ASSESSMENT WORK PRECLUDED ASSERTION OF FORFEITURE ON THEORY OF IMPROPER POSTING OF NOTICE OF LOCATION.—Plaintiff having attempted to relocate mining claim on theory that assessment work had not been done, with full knowledge of the boundaries of the claim, was in no position to claim forfeiture because of defendants' failure to properly post notices of their amended location.

8. MINES AND MINERALS—POSSESSION SUFFICIENT TO HOLD AGAINST INTRUDER ON VOID DISCOVERIES.—One who attempted on void discoveries to quiet title to mining claim, against one who in good faith monumented, posted, and recorded notices and made discovery, is considered a mere intruder, against whom the right of possession is sufficient.

9. APPEAL AND ERROR—AFFIDAVIT ON MOTION FOR NEW TRIAL CANNOT BE USED TO SHOW ERROR IN FINDINGS.—An affidavit, filed in support of motion for new trial, cannot be used to show error in findings of court, since it is not part of the evidence on which findings were based.

10. MINES AND MINERALS—FINDING THAT CLAIMS WERE REMONUMENTED PRESUMES COMPLIANCE WITH STATUTE.—In absence of anything to the contrary, where finding is made that amended mining claims were remonumented, it will be concluded that remonumenting was done in accordance with Civil Code of 1913, paragraph 4032, which is a legislative definition of what constitutes sufficient marking under Rev. Stats., U. S. § 2324 (U. S. Comp. Stats., § 4620).

---

See (1) 4 **C. J.**, p. 440. (2) 4 **C. J.**, p. 159 (Anno.). (3) 3 **C. J.**, p. 967 (Anno.). (4) 4 **C. J.**, p. 535. (5) 4 **C. J.**, p. 535. (6) 27 **Cyc.**, p. 599 (Anno.). (7) 27 **Cyc.**, p. 602. (8) 27 **Cyc.**, p. 653 (Anno.). (9) 4 **C. J.**, p. 679. (10) 27 **Cyc.**, p. 567.

APPEAL from a judgment of the Superior Court of the County of Yavapai. A. C. Lockwood, Judge. Affirmed.

---

7. Authority for and purpose of additional or amended location of mining claim, see note in 7 **L. R. A. (N. S.)** 880. See, also, 18 **R. C. L.** 1136, 1139.

8. See 18 **R. C. L.** 1121.

Mr. Perry M. Ling, and Messrs. Anderson, Gale & Nilsson, for Appellant.

Messrs. Clark & Clark, for Appellees.

JONES, Superior Judge.—This action was brought by appellant, plaintiff below, to quiet his title to two unpatented mining claims, named the Great Divide No. 1 and Great Divide No. 2, against the adverse claims of the appellees, defendants below, who answered, denying plaintiff's title, and setting up their ownership of two unpatented mining claims covering the same ground, and known as Sans Gene No. 1 amended and Sans Gene No. 2 amended, and praying that their title be quieted as against the plaintiff's adverse claims. The case was tried without a jury, and the court found the facts upon which judgment went quieting defendants' title, from which plaintiff brings this appeal.

There were a number of technical matters that appellees so much stressed in their briefs and at the oral argument that we will notice them.

It is argued that the appeal should be dismissed because there is found in the record no formal authentication by the clerk of the lower court. It is not claimed that any part of the record is spurious. The appeal should not be dismissed for such reason. The procedure outlined in paragraph 1258 of the Civil Code of 1913 was followed, and that suffices.

It is next contended that the court should not consider the findings of fact because the appellant did not preserve the evidence by transcript or its substitute. But the appellant directed the clerk of the superior court to send up such findings, and they are a part of the record before us. Paragraph 1258, C. C. It is our duty to consider them.

Another point raised is that the appellant did not specify in his motion for a new trial that the findings

are insufficient, and may not therefore make the point here. The statute, however, grants such right. Paragraph 1231, C. C. 1913.

The assignments are also attacked at some length. We have already denied the objections filed thereto. Counsel's difficulty in understanding them was not shared by us. If any criticism is to be made, we would say that they are too long and detailed. They are certainly clear enough.

Appellant did not preserve the evidence, and may, of course, not attack the findings as unsupported thereby.

The facts found are as follows:

On December 2, 1916, T. L. McLeod duly located Sans Gene No. 1 and Sans Gene No. 2, lode mining claims, in Yavapai county. Prior to September 30, 1920, appellees succeeded to McLeod's interest, and on that day recorded amended location notices of the two claims. Within 90 days thereafter they remonumented the ground and ''posted the amended location notices upon said claims as remonumented in monuments which they erected on said ground.

''That the original location monument of the Sans Gene No. 1 mining claim, the point of discovery of mineral on said claim, and the location work provided for by the Revised Statutes of Arizona, 1913, were situated about the center of the Sans Gene No. 1 claim as originally located and monumented. That the amended location notice of said Sans Gene No. 1 mining claim was posted in a monument about six hundred (600) feet to the south of the original location monument, and the same distance from the discovery and location work, and entirely outside the boundaries of the original Sans Gene No. 1 mining claim, but within the boundaries of such claim as amended, and within the boundaries of the Sans Gene No. 2 lode mining claim. That neither the original location notice or monument, nor the amended location notice or monument, contained anything whereby persons going upon the ground and examining one location monu-

ment could determine where the other was located. That the said Staunton and Hopkins never at any time abandoned their original point of discovery on the Sans Gene No. 1 mining claim, nor did any other work which they claimed or intended to claim as discovery or location work on said claim, either as originally located or as amended, save and except the original discovery and location work situated as aforesaid, and never at any time claimed any new discovery or any new location work at or contiguous to the amended location monument, but did intend to abandon all ground outside of the said claim as amended.

"That the original location notice of the Sans Gene No. 2 mining claim, the point of discovery of mineral on said claim, and the location work required by the Revised Statutes of the state of Arizona, 1913, were situated about the center of the said mining claim as originally located and monumented. That after said amended location notice was filed the said claim was swung and the boundaries remonumented in accordance with said amended location, so that the original point of discovery and location work of said Sans Gene No. 2 mining claim were entirely outside the boundaries of said claim as amended. That the amended location of said Sans Gene No. 2 mining claim was duly posted within a monument within the boundaries of said claim as amended, but that no discovery of mineral on which to base a mining location was ever claimed, by said Staunton and Hopkins, to have been made within the boundaries of the said Sans Gene No. 2 mining claim as amended, nor was any location work as required by the Revised Statutes of Arizona, 1913, ever done or claimed to have been done by the said Staunton and Hopkins within the boundaries of said mining claim as amended.

"That thereafter, and during the month of November, 1920, the said Hopkins and Staunton caused to be performed upon each of said Sans Gene mining claims, as amended, work for the development thereof in the value of One Hundred Dollars ($100) each. That said work consisted of an open cut on each of said claims approximately one hundred (100) feet

in length each, and ranging to not more than three and one-half feet in depth or three feet in width. That each of said open cuts was reasonably worth the sum of One Hundred Dollars ($100). That the said cut, made as assessment work on the Sans Gene No. 1, was located within the boundaries of said claim as amended, but entirely outside of the boundaries of said claim as it was located originally. That the said work made as assessment work on the Sans Gene No. 2 was entirely within the boundaries of said claim, both as originally located and as amended.

"That on the 1st day of July, 1921, and immediately after midnight, one Thomas Smart, the plaintiff herein, believing that the defendants had failed to perform the annual assessment work required by law upon said Sans Gene claims, and each of them, entered upon the same and posted location notices on them, claiming two mining claims called the Loise and Loraine respectively, and covering substantially the same ground as said Sans Gene claims, but that said location notices were never recorded as required by law.

"That thereafter, and some time between the 16th day of July, 1921, and the 29th day of July, 1921—the exact date whereof does not appear from the evidence—the said Thomas Smart, having been advised that his location notices of the Loise and Loraine mining claims aforesaid were premature in point of law, abandoned said claims and posted notices of the location of two mining claims called the Great Divide and the Great Divide No. 2 upon the ground covered by the said Sans Gene claims, and thereafter recorded said notices in Book 112 of Mines, pages 641 and 642, Records of Yavapai county, Arizona, and within ninety (90) days from said 16th day of July, 1921, did and performed all the acts required by the laws of the United States and of the state of Arizona to perfect valid lode mining claims for each of said claims.

"That upon the 16th day of July, 1921, the said W. F. Staunton and C. V. Hopkins entered upon the ground covered by the aforesaid Sans Gene mining claims Nos. 1 and 2, as amended, and began perform-

ing work thereon which they claimed as annual
assessment work. That said work consisted of a
shaft on each claim, one of the depth of fifteen (15)
feet, and the other of the depth of twenty-five (25)
feet, and that each of said shafts disclosed mineral
in place at a depth of more than ten (10) feet from
the surface, the work thereon being conducted con-
tinuously from said 16th day of July, 1921, until com-
pleted, one of said shafts being situated within the
boundaries of the Sans Gene No. 2 both as originally
located and as amended, and that each of said shafts
was reasonably worth in excess of One Hundred Dol-
lars ($100).

"That the two shafts so commenced by the defend-
ants Staunton and Hopkins on the 16th day. of July,
1921, as aforesaid, were never intended by them to be
considered as discovery or location work under the
laws either of the United States or of the state of
Arizona until long after the inception of this suit, but
were always intended by them to be considered to be
annual assessment work only.

"That the location work and point of discovery of
the Great Divide mining claim, as located by said
Thomas Smart, was done wholly within the bound-
aries of the Sans Gene No. 1 mining claim as origi-
nally located and as amended.

"That the location work of the Great Divide No. 2
and the point of discovery thereon was also within
the boundaries of said Sans Gene No. 1 mining claim,
as originally located and as amended.

"That plaintiff, Thomas Smart, at all times after
September 30, 1920, was thoroughly familiar with the
ground covered by both the Sans Gene No. 1 and Sans
Gene No. 2 mining claims, as originally located and
amended, and the monuments and notices thereon.

"That at the time he made his attempted reloca-
tions of said ground, both as the Loise and Loraine,
and as the Great Divide and Great Divide No. 2, he
did so, not because of any lack of knowledge of the
ground attempted to be covered by the said amended
location notices, or any belief that the same were
faulty, but solely because he believed that the assess-

ment work for the year 1920 was insufficient in quantity.

"That at the time he posted the location notices of the Loise and Loraine on July 1, 1921, one of said notices was posted upon ground within the boundaries of the Sans Gene No. 2 as amended, and covered ground which embraced that portion of the Sans Gene No. 2 whereon the attempted assessment work of September, 1920, and the shaft of July, 1921, were located.

"That the said Thomas Smart did not abandon his attempted locations of the Loise and Loraine, as above set forth, until some time between the 16th and 29th days of July, 1921, the exact date whereof does not appear from the evidence."

Any further consideration of the Loise and Loraine locations is eliminated because of their abandonment and the absence of a finding that either of them was based upon a discovery. Originally, the court found that discoveries had been made, but later found otherwise. We might say here that it is impossible to consider appellant's assignment that the court erred in modifying his findings in this particular because the evidence is not before us. No reason is pointed out why the court might not upon further review of the evidence alter his conclusions. In speaking of plaintiff's claims hereafter, we refer to the Great Divide claims. A brief recapitulation of the facts may clarify our opinion.

The discovery points of plaintiff's two claims were on ground common to both the original and amended Sans Gene No. 1. We will first consider this claim.

The amended notice was recorded September 30, 1920. Within ninety days thereafter the lines were swung and remonumented. A considerable part of the ground within the old lines, including the discovery point, was included within the new lines. At a point about 600 feet south of the discovery point, within the amended but without the original lines,

appellees erected a location monument, and there placed the amended notice. There is no finding that then or thereafter there was made at or contiguous to such monument any discovery. Evidently the calls of the amended notice were tied to the new monument. If tied to the point of discovery, there is necessarily a discrepancy of about 600 feet between the calls of the amended notice and the new lines. Assessment work for the year ending July 1, 1921, was done on ground within the new but without the old lines. The following sketch may aid in understanding the facts:

EXPLANATORY NOTE.—The dots in the side and end lines indicate monuments. The findings do not locate with precision the assessment work for 1920 and the shaft made in 1921, but declared they were not done within the lines of the original claim. The discovery points of the Great Divide claims are similarly not definitely located, and they are therefore placed in accordance with the general finding at random in the area common to both the original and amended Sans Gene No. 1 claims.

Paragraph 4028, C. C. 1913, provides that a location shall be made by erecting a monument at or contiguous to the point of discovery in which there shall be posted a notice of location, duly signed, containing the names of the claim and its locator, date of location, length and width in feet, "and the distance in feet from the point of discovery to each end of the claim," general course of the claim, and the locality with reference to some natural object or permanent monument, for identification purposes. Paragraph 4029 reads as follows:

"Until each and all of the above specified things shall have been done no right to such location shall be acquired."

Paragraph 4030 allows the locator ninety days after location as provided in 4028 to record a copy of the location notice, sink a shaft to a depth of at least eight feet from the lowest part of the rim at the surface or deeper, until mineral in place is revealed. This is called "location work" in the findings. Paragraph 4031 provides:

"The failure to do all the things enumerated in the preceding section in the time and place specified shall be construed to be an abandonment of the claim, and all right and claim thereto of the discoverer and locator shall be forfeited."

Paragraph 4032 provides that the surface boundaries shall be marked by six substantial posts of at least four feet in height, or monuments of stone at least three feet high, one at each corner of the claim, and one at the center of each end line. Paragraph 4033 provides that certain tunnel work shall be accepted as the equivalent of the discovery shaft (location work) provided in paragraph 4030. Paragraph 4034 reads as follows:

"Location notices may be amended at any time and the monuments changed to correspond with the

amended location; provided, that no change shall be made that will interfere with the rights of others.''

Appellant contends that the attempted amendment of Sans Gene No. 1 was abortive, because the appellees failed to post an amended location notice at or contiguous to the point of discovery prior to the intervention of plaintiff's locations of the Divide claims in July, 1921. This is said to result because, it is argued, the provisions of paragraphs 4028 and 4029 are applicable to amended notices. As we view the case, no discussion of the applicability of paragraph 4029 to the amended location is necessary. We agree with appellant that no rights can accrue by amendment as against intervening rights of others in a position to complain until the requirements of 4034 have been complied with.

This statute does not provide the method of amending location notices, but we will assume for the purposes of this opinion that it is contemplated that amended notices must be posted as provided in paragraph 4028; that is, at or contiguous to the point of discovery, which was not done here.

The effect of such failure, abstractly speaking, when rights of others intervene, operates, not only to prevent the acquisition of any right in the new ground, but as a forfeiture of all right in the ground which is retained, including, necessarily, the point of discovery.

By changing the boundaries, appellees abandoned all ground left outside the new lines. The court found that such was intended.

It is argued that if an amendment is ineffective the original claim will stand (subject, of course, to forfeiture for failure to perform assessment work), and no such forfeiture will result. This certainly is not true under the facts of this case. Appellees abandoned all the old ground outside the new lines and upon which were their monuments. If the amend-

ment be held ineffective, they have no valid location even as to the common ground, for their markings are gone, and these are essential to a valid location; section 2324, R. S. U. S. (U. S. Comp. Stats., § 4620), providing that the claim "must be distinctly marked on the ground so that its boundaries can be readily traced."

If, therefore, the failure to post the notice at the discovery point is to be given any effect at all, it operates as a forfeiture of the ground common to the original and amended claim, upon which, as we have shown, appellant made the discovery for each of the Great Divide claims.

Is the plaintiff in a position to claim such a forfeiture?

We approach the question in the same spirit that pervades the Arizona decisions on the subject—that of reluctance to declare forfeitures of claims made in good faith. The question early arose whether the failure to follow miners' rules relative to locations worked a forfeiture, and the predecessor of this court refused to give them such effect unless they expressly so provided. *Rush* v. *French,* 1 Ariz. 99, 25 Pac. 816; *Johnson* v. *McLaughlin,* 1 Ariz. 493, 4 Pac. 130.

The Montana courts have always taken a different view. On the other hand, the California courts hold with Arizona (*Emerson* v. *McWhirter,* 133 Cal. 510, 65 Pac. 1036), and Lindley approves what he calls the California-Arizona rule. Lindley on Mines, 3d ed., §§ 274, 384. The opinion of the United States Supreme Court in the case of *Yosemite M. & M. Co.* v. *Emerson,* 208 U. S. 25, 52 L. Ed. 374, 28 Sup. Ct. Rep. 196, concedes that this rule has "impressive strength," as their view of the rule in the Yosemite case was interpreted in *Butte & S. Copper Co.* v. *Clark-Montana Realty Co.,* 249 U. S. 12, 63 L. Ed. 447, 39 Sup. Ct. Rep. 231 (see, also, Rose's U. S.

Notes), decided as late as 1919, on appeal from the Montana district.

In *Kinney* v. *Lundy,* 11 Ariz. 75, 89 Pac. 496, it was held that the word "void," as used in the statute then effective, requiring relocations of abandoned ground to recite that fact, else they would be void, to mean voidable.

Appellees' good faith could not be successfully questioned. They recorded the amended notice, erected a monument, wherein they posted the same, monumented the ground as required by law, and performed their assessment work for 1920. It is true that the calls in the amended notice do not correspond with the monuments if the former be deemed tied to the discovery point, but this does not detract from their good faith, as they did not intend to deceive anyone (and no one was deceived), their mistake being in tying their calls to the new monument wherein they posted the amended notice.

Approaching the question in this light, we will consider the facts as they relate to the appellant's right to insist on the forfeiture.

The court found that at the time the plaintiff made his locations he was thoroughly familiar with the ground covered by this claim as it originally existed and as amended, and the monuments and notices thereon; that he made his locations, not because of any lack of knowledge of the ground attempted to be covered by the amended notice, but solely because he believed the assessment work was insufficient in quantity.

Appellant incorporated in the record certain correspondence between the appellee Staunton and himself, and we therefore feel justified in referring thereto. On July 18, 1921, the appellee Hopkins wrote appellant that he had heard that the latter had relocated the Sans Gene claims, and asked him if he

would give his reasons therefor, to which the appellant replied on July 22, 1921, as follows:

"Mr. C. V. Hopkins, Los Angeles, Cal.—Dear Sir: Your letter of the 18th rec. and contents noted. Well Hop if you done your 1920 assessment work on these claims you will have to show me. two little trenches about 2 days work each. no place in the solid rock. no use for me to tell you Hop that your assessment must be development to the claim a trench a foot to 18. inches deep in soft dirt 10 miles long would not be assessment work. and you know that and the law says you must do 240 cubic feet of work in solid rock and minral in place. did you do it and those wonderful brilliant men you had looking after your work recorded and swore to the 140 cubic feet of work and made afadavit to it. Will that hold ground now if they didnt do it go look at the records and they didnt do that much. and I am ready to show you any time. and if I aint right the ground is yours. and if you are rong the land is mine. and I know I am Right or I would not of located those claims. and would not of done it any how if your partners had of atended to their own dam business they wanted to get me into troubel and law suits now I will give that long fased partner of yours all the hell he wants and then some. the hole Verde Central Property was Patented without one location hole. it is all open. as far as law is concerned and I will try them out in the Federal Court fer all of it Before long. and Hop dont forget I had that fraction located before you or McLeod and you peged it over me. and said you took it up for the U. V. But you dident and you buffaled me and I laid down then and I have watched it ever since for your foot to slip and it sliped. But with all of that show me and the land is yours. Well as to the Page and Book Number 1 know them better than you do so I have thureley examined the records. With the best lawyers of the State and they say I am right not one. but 5 lawyers has passed on that titel so I think I am Right and 2 Dupty U. S. Mining Engineers have measured your work and they say you are rong that the ground was open on the failure of you to Perome

your Proper Work. But Hop I am always willing to listen and if I am rong your troubel is over with me. But Court is where I want to go and where we will go if you Presist in holding something that you abandoned. Hire someone that knows how to perome Assessment Work next time fer yours was not done. If you paid for it or not and I kept Jim Presleys time while he worked on those claims.

"Yours truly,
"THOS. SMART, Jerome, Ariz."

Appellant had all the information he would have had if the amended notice had been posted at the discovery point. Primarily, the purpose of the notice is to give the information appellant already had. The fact that such omission had been made in nowise actuated him in relocating the ground. He knew, of course, as well as the appellees did, that the amended notice was posted at the wrong place (assuming, as we are, that appellant's contention in that regard is well taken), but he put that aside and acted on the theory that the assessment work had not been done, as to which he was in error. Under such state of facts we think he was in no position later to dispute appellees' location on the ground that a forfeiture had occurred.

In taking this position we are but following the rule announced by the United States Supreme Court in the case of *Yosemite M. & M. Co.* v. *Emerson,* 208 U. S. 25, 52 L. Ed. 374, 28 Sup. Ct. Rep. 196, decided in 1908, and later approved in *Butte & S. Copper Co.* v. *Clark-Montana Realty Co.,* 249 U. S. 12, 63 L. Ed. 447, 39 Sup. Ct. Rep. 231 (see, also, Rose's U. S. Notes) in 1919.

The Emerson case involved a miners' rule in a California district that mining claims should be located by posting two notices on the claim. The junior location there involved was, as here, made on the theory that annual labor had not been performed,

but in the resulting litigation the junior locator took the additional position that no valid location had been made for want of posting two notices. The Supreme Court took the position that the junior locator was in no position to claim a forfeiture. This was said to result from his knowledge of the facts relative to the claim, the existence of its boundaries, and because he made his attempted location on the theory that annual assessment work had not been done. Said the court:

"In further course of examination he [the junior locator] testifies that he was sent up by another party to jump the Slap Jack mine. McWhirter was not undertaking to take advantage of the want of notice, but was 'jumping' the claim on the theory that the required amount of assessment work for 1898 had not been done. To hold that the want of notice under such circumstances would work a forfeiture would be to permit the rule to work gross injustice and to subvert the very purpose for which it was enacted. The object of posting the preliminary notice of the claim is to make known the purpose of the discoverer to claim title to the same to the extent described, and to warn others of the prior appropriation. Lindley, Mines (2d Ed.) § 350. In this case the locator had gone beyond this preliminary notice; the outlines of the claim had been marked, and the extent of the claim was fully known to McWhirter when he attempted his location. He knew all about the location and boundaries of the claim that any notice could have given him. He undertook to locate his new claim precisely within the boundaries of the old one, and was seeking to take advantage of the want of compliance with the statutory requirement as to the amount of annual assessment work to be done. Having this knowledge, we hold that McWhirter, and those claiming under him, could not claim a forfeiture of title for want of preliminary notice under the former location."

The syllabus of the case reads as follows:

"One who attempts to relocate a mining claim on the theory that the required amount of annual assessment work has not been done, with full knowledge of the location and boundaries of the claim, cannot assert a forfeiture of title for failure, on the part of the original locators, to comply with the mining rules respecting notices of location."

In the Clark-Montana case the court said of the Yosemite case:

"*Yosemite Gold Min. & Mill. Co.* v. *Emerson* was concerned with a regulation of the state of California which prescribed the manner of the location of a claim. The regulation had not been conformed to and the validity of the location was attacked on that ground by a subsequent locator who had had notice of the claim, he contending that there was forfeiture of it. The contention was rejected and we said, that to yield to it would work great injustice and subvert the very purpose for which the posting of notices was required, which was, we further said, 'to make known the purpose of the discoverer to claim title to the' claim 'to the extent described and to warn others of the prior appropriation.' The comment is obviously applicable to the asserted defects in the declaratory statement of appellees. It, like the California requirement, had no other purpose than 'to warn others of the prior appropriation' of the claim, and such is the principle of constructive notice. It—constructive notice—is the law's substitute for actual notice, and to say that it and actual notice are equivalents would seem to carry the self-evidence of an axiom."

It is said to be without reason to deny one the right to assert the invalidity *ab initio* of a prior claim arising out of a failure to perform some requirement of the miners or the state merely because the junior location was made on an erroneous theory. Whether that criticism of the Emerson case be well founded or not, we do not think it unreasonable to hold that one in the position of the junior locator in this case may not claim what amounts to a forfeiture of existing rights

of the senior locator, made in good faith, because of the latter's. failure to post the amended location notice at the proper place.

The Supreme Court of Montana, in *Ringling* v. *Mahurin,* 59 Mont. 38, 197 Pac. 829, refused to accept the doctrine of the Yosemite case. There the plaintiff, the junior locator, secured an injunction restraining the senior locators from extracting ores from the property pending the final determination of the case. The latter sought to have the injunction dissolved, and when this was refused, appealed. The case did not go to final judgment.

The manner in which the senior locators were alleged in the complaint in that case to have failed to meet the requirements of the Montana Code does not appear from the statement in the opinion. As the court points out, the trial court merely passed on the question "whether, there being a controversy over the title, it should exercise its discretion in preserving the property until it could finally determine this question (of title) upon a trial on the merits," and for that same reason the Supreme Court declined to pass upon the question of title. Why, then, it was found necessary to reject in its entirety the doctrine of the highest court of the land, announced as late as 1908 and reaffirmed in 1919, is not perceived.

We do not consider *Hedrick* v. *Lee,* 39 Idaho, 42, 227 Pac. 27, a rejection of the doctrine of the Yosemite case. The court held that failure to do the statutory location work (sinking a shaft) prevented the initiation of any rights by the attempted location, and refused to apply to such a situation the doctrine that noncompliance with local requirements is not fatal to a valid location unless it is expressly so provided. As we have seen, the Yosemite case did not pass upon that question even as it related to failure to post notices, which, in any event, is quite a different thing from failing to sink a shaft. The good

faith of one who fails to comply with the latter regulation might well be questioned, and the rule we have accepted does not operate in favor of one acting otherwise. But the doctrine of the Yosemite case, as we are considering it here, was clearly not involved.

The case of *Blake* v. *Cavins*, 25 N. M. 574, 185 Pac. 374, turns on the right of the junior locator to plead that the senior location was void, and secondly, that it was forfeited for failure to perform assessment work. The court declares that such defenses are consistent, as it seems they must be under their Code. Reading certain passages of the opinion in the light of the instruction there attacked, one might argue that the court rather questions the doctrine of the Yosemite case in so far as it holds, if it does so hold, that an estoppel arises from the facts there detailed, not only against showing forfeiture, but also that no rights were ever acquired. Be that as it may, there is nothing in the Blake opinion inconsistent with our holding in this case.

Sans Gene No. 2 amended claim is in a different situation. When the lines were swung and remonumented the point of discovery was left outside the new lines. It could not be regarded as an amended location. Nor is it a complete original location. It is of course true that discovery does not have to precede monumenting and other acts of location, but it is prerequisite to a valid location that notice thereof be posted at or contiguous to the point of discovery (paragraph 4028, C. C. 1913), else, as paragraph 4029 provides, no right to such location shall be acquired. In July, 1921, the appellees sank a shaft in which mineral in place was revealed, but there is no finding that it was at or contiguous to the location monument in which had been placed the amended notice.

Appellees seek to overcome this failure by urging the rule of the Emerson case, *supra*, pointing out that

appellant's knowledge and motives were the same as to this claim as they were as to the other one. But, as we said above, that was a case of forfeiture, and this has a different aspect. We pass the question.

Appellant insists that the decree quieting appellees' title to Sans Gene No. 2 amended must be reversed, inasmuch as the defendants failed upon their cross-complaint to establish title to that claim.

While the general rule is that one must recover upon the strength of his own title and not the weakness of his adversary's, we think the situation here calls for the application of the equally well settled exception that, as against a mere intruder, the right of possession is sufficient. While this has been usually announced in ejectment cases, we think it applicable here. In the nature of things this is akin to a possessory action. *Hedrick* v. *Lee,* 39 Idaho, 42, 227 Pac. 27.

Appellees in good faith monumented the ground, posted a notice, recorded the same, and made a discovery, and were sinking a shaft from July 16, 1921, until it was completed. They were either actually in possession when appellant sought to intrude under his void discoveries or constructively so as against him. 27 Cyc. 641, note 3.

Mr. Lindley, in section 216 of his work, says:

"As was said by the Supreme Court of California: 'As against a mere trespasser, one in possession of a portion of the public land will be presumed to be the owner, notwithstanding the circumstance that the court has judicial notice that he is not the owner, but that the government is. This rule has been maintained from motives of public policy, and to secure the quiet enjoyment of possessions which are intrusions upon the United States alone.' This is nothing more than a reiteration of the familiar rule that, as against a mere intruder, or one claiming no higher or better right than the occupant, possession is *prima facie* evidence of title."

The quotation is from *Brandt* v. *Wheaton*, 52 Cal. 430.

In *Haws* v. *Victoria Copper Min. Co.*, 160 U. S. 303, 316, 40 L. Ed. 436, 16 Sup. Ct. Rep. 282, 287, at 440, it is said:

"The elementary rule is that one must recover on the strength of his own and not on the weakness of the title of his adversary, but this principle is subject to the qualification that possession alone is adequate as against a mere intruder or trespasser without even color of title, and especially so against one who has taken possession by force and violence. This exception is based upon the most obvious conception of justice and good conscience. It proceeds upon the theory that a mere intruder and trespasser cannot make his wrongdoing successful by asserting a flaw in the title of the one against whom the wrong has been by him committed."

Appellant instituted this attack upon appellees' right to the claim. So far as his entry upon this claim was concerned, appellant was a mere intruder. His discovery points were upon appropriated ground, and he could not base any right thereon.

We will consider the remaining assignments of error, of which two are that the court erred in finding that T. L. McLeod made a valid location of the original Sans Gene claims: Counsel refer us to what purport to be location notices of these claims signed at first by one H. G. Ellis. Ellis' name is erased, and that of McLeod written in its stead. For this, counsel say, there was no authority, and they may be right, but before we can agree with them we would have to read the evidence, which counsel did not preserve. But, they say, the affidavit of one A. E. Weidman, filed in support of appellant's motion for a new trial on the ground, *inter alia*, of newly discovered evidence, shows that "McLeod would have testified he never made the locations" had he been a witness.

Clearly, however, such an affidavit is no part of the evidence upon which the findings are based. Nor is the assignment that such motion was improperly denied argued.

The trial court is said to have erred in holding that the Sans Gene amended claims were distinctly marked on the ground so that their boundaries could be readily traced, as provided in section 2324, R. S. U. S. The court found that they were remonumented, and, in the absence of anything to the contrary, we conclude that this was done in accordance with paragraph 4032 hereinbefore digested. The post and stone monuments therein required are the legislative definition of what constitute sufficient markings under section 2324, R. S. U. S., and we certainly are not disposed to say otherwise.

Counsel stress the finding that there was nothing in the original or amended location notices or the original or amended location monuments of the Sans Gene No. 1 claim whereby a "person going on the ground and examining one location monument could determine where the other was located" as of great importance. We fail to see it. For the purposes of the opinion we have held with appellant that the amended notice of location of this claim is invalid as to the intervening rights of anyone in a position to complain, and counsel can ask for no more. If there were any pretense that the appellant was deceived in any way by the fact that the appellees placed the amended location notice in the wrong place, this finding would have considerable bearing, but there is no such suggestion.

We have considered in one way or another all of counsel's numerous assignments that they argued. Those that were not argued are denied, as they do not reveal error from their statement.

We think the court was right in dismissing plaintiff's complaint, and in quieting defendants' title to

the Sans Gene No. 1 amended and Sans Gene No. 2 amended.

McALISTER, C. J., and ROSS, J., concur.

LOCKWOOD, J., having tried the case in the lower court, was disqualified, and Hon. GERALD JONES, Judge of the Superior Court of Pima County, was called to sit in his stead.