**In re VERMONT FIBERGLASS, INC. d/b/a Pettit Pools of Rutland, Debtor.**

**Bankruptcy No. 83–155.**

United States Bankruptcy Court, D. Vermont.

March 8, 1984.

Robert I. Tepper, Rutland, Vt., for First Vermont Bank & Trust Co.

Mark Butterfield, Rutland, Vt., for debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On August 5, 1983, Vermont Fiberglass, Inc. (Fiberglass), a manufacturer of swimming pools and spa equipment, filed a petition under chapter 11 of the Bankruptcy Code (Code) in order to rehabilitate as an ongoing business.

Twenty-two and a half months prior to the filing of the petition, on September 25, 1981, the Vermont Secretary of State had revoked the corporate charter of Fiberglass for failure to file an annual report as required by Vermont Statutes, title 11, section 2063. Fiberglass did not notify creditors that its charter had been revoked, as required by Vermont Statutes, title 11, section 2063 and 2056. The charter has never been reinstated.

On December 15, 1983, the First Vermont Bank and Trust Company (Bank), a secured creditor in this proceeding, filed a motion to dismiss under Code section 1112(b)(2), on the ground that Fiberglass did not file its petition for relief in good faith, in that Fiberglass failed to disclose the revocation of its corporate charter, and that Fiberglass as a dissolved corporation may not obtain relief under chapter 11 of the Code.

Hearings after notice were held from time to time. At the final hearing on February 16, 1984, Fiberglass filed a motion to substitute as the debtor in this case, "Jon Goodrich d/b/a Vermont Fiberglass, Inc." Mr. Goodrich is the president and principal stockholder of Fiberglass. The Bank moved to convert the case to a case under chapter 7, in the event the case were not dismissed.

From the records in the case and the testimony adduced at the hearings, the following facts were established:

## FACTS

At the time of the filing of the petition, Fiberglass had secured debts totalling $789,247, unsecured debts totalling $129,729, and assets valued at $752,654. The assets were:

| | |
|---|---|
| cash | $ 590 |
| notes receivable | 44,500 |
| accounts receivable | 61,664 |
| vehicles | 34,400 |
| office equipment | 500 |

manufacturing equipment:

| | | |
|---|---|---|
| machinery | | $ 54,000 |
| moulds * | | 144,000 |
| other | | 32,000 |
| | 230,000 | |
| inventory ** | 96,000 | |
| real property | 285,000 | |
| total | $752,654 | |

* Valuation at $144,000 reflects value-in-use. Liquidation sale value does not exceed $50,000.

** Valued at historic cost.

During the pendency of this proceeding, Fiberglass has been dilatory with respect to the filing of the monthly operating reports required by Bankruptcy Rule 2015; has shown no material improvement in economic health; and has demonstrated no reasonable probability of becoming viable in the forseeable future. It has failed to keep taxes current on its real property and has failed to make periodic cash payments to the Bank beginning November 1, 1984, as Mr. Goodrich represented in October that it would (the most recent payment to the Bank occurred two years ago; the current balance due on the mortgage note held by the Bank exceeds $327,000 in principal and interest, plus $33,000 in taxes, plus attorney's fees).

Fiberglass has filed neither a disclosure statement nor a plan of reorganization, although the case was commenced more than 7 months ago.

Fiberglass filed for relief more than six months after the Bank had initiated a foreclosure action in state court, and a few days before a scheduled hearing on redemption or nonredemption of Fiberglass' real property was to occur in the state court.

## DISCUSSION

■ Code section 1112(b) provides that the court may dismiss or convert a case under chapter 11 "for cause". The section lists several examples of "cause". The listed grounds are nonexclusive. *In re Kors, Inc.*, 13 B.R. 676, 5 CBC 2d 190 (Bkrtcy.D. Vt.1981); *In re Alton Tel. Printing Co.*, 14 B.R. 238, 5 CBC 2d 236, 8 BCD 457 (Bkrtcy.S.D.Ill.1981); *In re Lamar Estates, Inc.*, 6 B.R. 933 (Bkrtcy.E.D.N.Y. 1980). *Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36, 1 CBC 2d 713, 6 BCD 164 (Bkrtcy.N.D.Ga.1980). The totality of the facts will determine whether Fiberglass may obtain the continuing protection of the court, *Matter of Levinsky*, 23 B.R. 210 (Bkrtcy.E.D.N.Y.1982); *In re McLaury*, 25 B.R. 30 (Bkrtcy.N.D.Tex. 1982); *Matter of Horizon Hospital, Inc.*, 10 B.R. 672, 7 BCD 682 (Bkrtcy.M.D.Fla. 1981); *Matter of Nancant, Inc.*, 8 B.R. 1005, 7 BCD 410 (Bkrtcy.D.Mass.1981), and the court has wide discretion to make an appropriate disposition under section 1112(b). House Report No. 95–595, 95th Cong., 1st Sess. 405 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

■ The court should look to state law to resolve the issue of whether Fiberglass, as a dissolved corporation, may obtain relief under chapter 11 of the Code. *In Chicago Title and Trust Co. v. Forty-One-Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937); *In re Liberal Mack Sales, Inc.* 24 B.R. 707, 9 BCD 1119 (Bkrtcy.D.Kan.1982); *Matter of S & T Terry Contractors, Inc.*, 6 B.R. 84 (Bkrtcy.N.D.Ill.1980); *In re Rust Control*, 1 B.R. 303 (Bkrtcy.W.D.Va.1979); *In re Heark Corp.*, 18 B.R. 557, 6 CBC 2d 440 (Bkrtcy.D.Md.1982).

■ Under Vermont law, Fiberglass, as a corporation dissolved by the Secretary of State for failure to file an annual report, is under a statutory duty to wind up its business affairs and liquidate its assets. The relevant provisions of Vermont law are sections 2063 and 2056 of title 11, Vermont Statutes.

Section 2063 provides:

A corporation ... which fails to file an annual report ... shall cease to exist ... If the terminated corporation does not file an annual report within nine months of its termination ... the secretary of state shall issue a notice of revocation and the corporation shall begin a dissolution in the same manner as if the corporation had filed an intent to dissolve under section 2056 ...

Under section 2063, Fiberglass ceased to exist prior to the date, September 25, 1981, that its charter was revoked. Fiberglass should have begun a dissolution as of the date it received the notice of revocation issued by the Secretary of State.

Section 2056 describes the requirements of dissolution:

(1) The corporation shall immediately cause notice thereof to be mailed to each known creditor of the corporation ...

(2) The corporation shall proceed to collect its assets, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders, pay, satisfy and discharge its liabilities and obligations or make adequate provision therefor and do all other acts required to liquidate its business and affairs, and, after paying or adequately providing for the payment of all its obligations, distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.

(3) The corporation, at any time during the liquidation of its business and affairs, may make application to a court of competent jurisdiction within the state ... to have the liquidation continued under the supervision of the court ...

Under this section, Fiberglass had, subsequent to September 25, 1981, no authority to remain in the marketplace in the ordinary course. It had authority only to wind up its affairs and liquidate, and to use a court of competent jurisdiction within the state, such as this court, for that purpose if it chose. Thus, as of the date of the filing of the chapter 11 petition, Fiberglass had no authority under state law to conduct itself as a going concern. It follows that Fiberglass may not use this forum for the purpose of reorganization.

Fiberglass is not saved by the survival remedies of a Vermont corporation after dissolution. Vermont Statutes, title 11, section 2075 provides:

The dissolution of a corporation ... by reason of its failure to file an annual report ... shall not take away or impair any remedy available to or against such corporation ... for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within 3 years after the date of such dissolution...

The effect of this section is to permit litigation involving causes of action arising from transactions or occurrences taking place prior to the corporate dissolution, to be commenced, by or against the corporation, within 3 years of the dissolution. The section is not authority for the proposition that Fiberglass may continue to exist as an ongoing concern in the bankruptcy court, in order to remedy post-dissolution business losses.

The cases *In re Heark Corp.*, 18 B.R. 577 (Bkrtcy.D.Md.1982) and *In re Liberal Mack Sales, Inc.*, 24 B.R. 707 (D.Kan.1982), do not support the proposition that Fiberglass may reorganize under chapter 11. *Heark* and *Mack* involved adjudications of chapter 7 cases. Reliance on dicta in the two cases is misplaced: the *Heark* dicta issued with reference to a chapter 11 liquidation and the *Mack* dicta issued with reference to Kansas law which the adjudicating forum construed to "appear to permit reorganization of dissolved Kansas corporations." 24 B.R. at 710. In the instant case, Fiberglass is trying to reorganize, not liquidate, under chapter 11, and this court construes Vermont law to proscribe the reorganization of a Vermont corporation dissolved for failure to file an annual report.

As to whether this is an appropriate forum in which to permit Fiberglass, an entity which exists only for the purpose of winding up its affairs, to liquidate, the court notes that abstention would require dismissal of the case, see, *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 8 BCD 89 (Bkrtcy.S.D.N.Y.1981); *In re R.V. Seating, Inc.*, 8 B.R. 663 (Bkrtcy.S.D.Fla.1981), to the detriment of the unsecured creditors if a defect inheres in the secured status of the Bank. As the best interests of unsecured creditors would be served by conver-

sion of this case to a case under chapter 7, the court declines to abstain from supervising the liquidation proceedings.

■ The Motion to Substitute Debtor must be denied. Bankruptcy Rule 7025 (Substitution of Parties) invokes Federal Rule 25. The Federal rule provides for the substitution of parties in certain enumerated circumstances which do not embrace the instant circumstances. Under ordinary principles of construction, parties may be substituted only as provided in the rule. The result is that Mr. Goodrich may not be substituted in lieu of Fiberglass as the debtor in this case.

The court observes that this case should be a case under chapter 7 even were Mr. Goodrich the debtor here. Since August 5, 1983, the date of the order for relief herein, no plan has been proposed and no demonstration has been made that the business vehicle is viable. No disbursements have been made to the Bank pursuant to Mr. Goodrich's representation that monthly payments would commence in November of last year. Property taxes are being paid by the Bank, not by the instant business venture or by Mr. Goodrich. Periodic operating reports have not been filed in compliance with Rule 2015. No disclosure statement has been filed. The inference to be drawn is that the business is not flourishing and is buying time, hoping for manna from heaven. Meanwhile, the estate is burdened by ever-increasing debt and the assets are depreciating in value. The course prejudices creditors; the failure to notify creditors of the corporate dissolution and to wind up affairs in timely fashion constitutes unreasonable delay.

### ORDER

Upon the foregoing,

IT IS ORDERED,

(1) that the Bank's Motion to Dismiss be, and hereby is, DENIED;

(2) that Fiberglass' Motion to Substitute Debtor be, and hereby is, DENIED; and

(3) that the case be, and hereby is, converted to a case under chapter 7.