711 P.2d 637

**GOLDFIELD MINES, INC. an Arizona corporation, Plaintiff-Appellee,**

v.

**Darrell G. HAND, Defendant-Appellant.**

**No. 1 CA–CIV 6833.**

Court of Appeals of Arizona,
Division 1, Department D.

Oct. 29, 1985.

Motion for Reconsideration Denied
Dec. 11, 1985.

Hill, Savoy & Ensign by John E. Savoy, Phoenix, for plaintiff-appellee.

Meyer, Vucichevich & Cimala, P.C. by George R. Ferrin and Wayne Godare, Phoenix, for defendant-appellant.

## OPINION

HAIRE, Judge.

This appeal is from summary judgment in favor of the plaintiff, Goldfield Mines, Inc., in its action to enjoin the defendant, Darrell G. Hand, from exercising dominion or control over, retaining possession of, or removing ore from fifteen unpatented mining claims. On cross-motions for summary judgment, the trial court ruled that Gold-

field Mines was entitled to possession of the claims and that Hand had no right, title or interest in any of them. The primary issues on appeal are: (1) Did Goldfield Mines have standing to assert ownership rights in the mining claims? (2) Did Goldfield Mines correctly file the documents required by the 1976 Federal Land Policy and Management Act with the Bureau of Land Management? (3) Were eight claims, located while the land was withdrawn from mineral entry, void, and if so, were Hand's locations in 1981, after the land was reopened, valid? (4) Were three claims void because location notices were initially recorded in the wrong county?

We will discuss the facts as they become relevant to each of the issues.

## PLAINTIFF'S STANDING

We first address the threshold issue of whether the plaintiff had an interest in the claims which would permit it to bring this action. A corporation named Goldfield Mines, Inc. (hereinafter Goldfield I), was originally formed in 1949 and acquired the mining claims shortly thereafter. Goldfield I's corporate charter provided for a corporate existence of 25 years. The charter was not renewed and therefore it expired in 1974. Although a five year renewal period is provided by A.R.S. § 10–105, no attempt was made to comply with the renewal statute during the five year period and the corporate charter of Goldfield I was revoked by the Arizona Corporation Commission in 1980.

Within a few weeks after the revocation, the directors and officers of the defunct corporation formed a new corporation with the same name. For convenience, we will generally refer to the new corporation as Goldfield II. The directors and officers intended that Goldfield II would be a continuation of Goldfield I, and toward that end, executed a quitclaim deed purporting to convey the assets of Goldfield I to one of Goldfield II's officers, back-dating the deed to 1974, a date prior to the expiration of Goldfield I's charter. Goldfield II then resolved to "accept" a quitclaim deed of the

property back from the officer. It is questionable that this transaction vested ownership of the mining claims in the new corporation in view of Goldfield II's concession that upon the prior dissolution of Goldfield I, ownership of the corporate assets passed to the shareholders. Appellant Hand contends that by the time Goldfield II attempted to obtain the property, the shareholders of Goldfield I owned it and the directors of the new corporation no longer had the power to transfer it to the new corporation.

Accordingly, Hand moved to dismiss Goldfield II's complaint, arguing that Goldfield II had no interest in the mining claims and thus no right to prevent him from relocating them. The trial court summarily denied the motion. On the record presented on appeal, although it appears that the transfer described by Goldfield II did not create in that corporation any ownership interest in the assets of Goldfield I, it is unclear precisely what occurred. A court should not grant a motion to dismiss unless it appears certain that the plaintiff would not be entitled to relief under any state of facts which is susceptible of proof under the claim stated. *Chirco Construction Co. v. Stewart Title & Trust,* 129 Ariz. 187, 629 P.2d 1023 (App.1981); *San Manuel Copper Corp. v. Redmond,* 8 Ariz.App. 214, 445 P.2d 162 (1968).

Goldfield II offered, in support of its motion for summary judgment, evidence that it was a successor corporation to Goldfield I with the same shareholders, officers and directors. Goldfield II claimed to have assumed the liabilities of Goldfield I. There is no evidence, however, regarding whether the shareholders were informed of the transfer of ownership, of how many of the original 65 shareholders remained, or of whether and to what extent Goldfield II was acting as the agent of the shareholders in bringing this action. Although Hand alleges that only two of the shareholders of the first corporation are shareholders of the second, there is no substantial evidence to support this allegation. We conclude that the evidence is in conflict as to whether Goldfield II was a successor to Goldfield

I and that the trial court did not err in denying the motion to dismiss. There is insufficient evidence, however, in the record to determine Goldfield II's successorship to Goldfield I's interest in the mining claims as a matter of law. This necessitates a remand for the resolution of those issues in which Goldfield II's rights are dependent upon its status as a successor in interest to the rights of Goldfield I. However, a remand will not be necessary as to those claims concerning which Hand has already demonstrated rights superior to any which might be asserted by a successor in interest to the rights of Goldfield I. We now proceed to determine whether any of the claims asserted on appeal by Hand justify the granting of summary judgment in his favor.

## COMPLIANCE WITH THE FEDERAL LAND POLICY AND MANAGEMENT ACT

We consider first appellant's contention that all fifteen of Goldfield I's unpatented claims have been forfeited because of Goldfield I's alleged failure to comply with the requirements of the Federal Land Policy and Management Act. The Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701 et seq., was enacted in 1976. For the first time the Act imposed a federal filing requirement for unpatented mining claims. The Act required the owner of an unpatented mining claim to file a copy of the certificate of notice and either an affidavit of assessment work or notice of intent to hold the claim with the local office of the Bureau of Land Management. 43 U.S.C. § 1744. For claims existing prior to October 21, 1976, including the fifteen claims at issue here, the deadline for initial compliance was October 22, 1979. 43 C.F.R. § 3833.1–1. Failure to file by October 22, 1979, as required by the statute, is conclusively deemed to constitute an abandonment of the claim. 43 U.S.C. § 1744(c).

Appellant Hand's activities concerning the claims involved in this action began in early 1981, while he was working for another mining operation in the area. His investigation revealed that the corporate charter of Goldfield I had expired without renewal on September 29, 1974. He found on record a quitclaim deed dated July 10, 1974, by which Goldfield I conveyed the claims to one Gary Nichols. The deed, though dated July 10, 1974, and purportedly executed at that time, was not recorded until 1980. A second quitclaim deed dated and also recorded in 1980, reconveyed the property to Goldfield Mines, Inc. (Goldfield II). From the record presented in the trial court, it is clear that the "1974" deed was actually prepared, executed and delivered in 1980.

Upon examining the federal records, it appeared to Hand that when Del Tierra Engineering and Mining Corporation filed the requisite FLPMA documents in 1979 on behalf of Goldfield I, the claims were not then owned by Goldfield I, but rather had been conveyed to Gary Nichols by the "1974" deed. Hand, assuming that the filing in the name of the defunct corporation was ineffective, entered the property and relocated the claims.

Goldfield II promptly commenced this action seeking to prevent Hand from exercising any dominion and control or retaining possession of the claims. The trial court initially issued a temporary restraining order as requested by Goldfield II, and later awarded summary judgment in Goldfield II's favor without explanation, implicitly ruling that the FLPMA filing in the corporate name was effective, that Hand's attempted relocations had not been successful, and that Goldfield II was a continuation or successor corporation to Goldfield I and could bring this action.

The crux of Hand's argument on appeal is that the expired corporation could not validly take action to comply with the FLPMA requirements, and that therefore the filing, even though complete and timely, was null and void. He argues that A.R.S. § 10–105, the statute Goldfield II relies on as validating the actions of Goldfield I, is inapplicable because the statute was enacted two years after Goldfield I was dissolved for failure to renew its char-

ter. In our opinion, regardless of which statute applies, the result is the same.

 The statute in effect at the time of Goldfield's I's dissolution permitted corporations whose charters had expired to continue to act for the purpose of winding up their affairs. ·A.R.S. § 10–364 (1956). This conforms to the general rule that after the expiration of the period of existence set forth in a corporation's charter, the corporation can act only to wind up its affairs. It cannot carry on new business. *See* authorities cited in 19 Am.Jur.2d, *Corporations* § 1646. The corporation may still hold and dispose of its property, collect its assets and discharge its obligations, but only for the purpose of closing its affairs. 19 Am.Jur.2d, *Corporations* § 1671; 19 C.J.S. *Corporations* § 1728. Corporations may, as part of the winding up process, file documents required to protect rights in corporate assets. *See e.g., Weltsch v. O'Brien*, 25 Ariz.App. 50, 540 P.2d 1269 (1975) (decided under § 10–364; corporation, as part of winding up, could file affidavit renewing judgment after dissolution). We conclude that Goldfield I had the power, in winding up its affairs, to file the requisite FLPMA documents in order to preserve its assets.

The newer statute also contemplates situations where it is necessary to take post-dissolution corporate action in order to protect corporate property. A.R.S. § 10–105, in effect in 1979 when Goldfield I made the federal filing, provides that:

"The dissolution of a corporation ... by expiration of its period of duration, shall not take away or impair any remedy available to ... such corporation ... for any right or claim existing ... prior to such dissolution.... *The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim.*" (Emphasis added).

It is unchallenged that any rights which Goldfield I had in the unpatented mining claims were in existence prior to the expiration of the corporation's charter. In our opinion the clear language of A.R.S. § 10–105 gave the directors and officers of Goldfield I the power to make the FLPMA filings in the exercise of their authority to take such action as might be appropriate to protect the rights of the corporation. The filing was necessary to prevent the automatic forfeiture and abandonment of the claims. We note Hand's contention that neither of these statutes is applicable to the action taken by Goldfield I because the officers and directors of Goldfield I acted under the mistaken belief that the corporation continued to exist, rather than for the purpose of winding up the corporate affairs. We refuse to hold, however, that an act which the directors and officers could have performed purposefully, as part of preserving the corporate assets pending distribution to their rightful owners, is ineffectual merely because it was done in ignorance of the expiration of the corporate charter. For the foregoing reasons, we hold that the trial judge did not err in finding, on the record presented to him, that the FLPMA filings on Goldfield I's behalf were valid and effective.

We also reject Hand's related argument that failure to properly identify the legal owners in the FLPMA filings resulted in automatic abandonment of the claims. He asserts that either Nichols or the shareholders of Goldfield I were the legal owners of the claims, and that failure to name them was a fatal defect in the documents. Hand correctly points out that failure to meet the filing deadlines imposed by FLPMA has uniformly been held to constitute an automatic forfeiture of claims—most notably by the United States Supreme Court's recent opinion in *United States v. Locke*, 471 U.S. ——, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985). *Locke* does not, however, hold that every deficiency in the requisite information warrants forfeiture. That case involved a late filing, and the court rested its analysis and holding on the inherently arbitrary nature of deadlines:

"While we will not allow a literal reading of a statute to produce a result 'demonstrably at odds with the intentions of its

drafters,' ... with respect to filing deadlines a literal reading of Congress' words is generally the only proper reading of those words. To attempt to decide whether some date other than the one set out in the statute is the date actually 'intended' by Congress is to set sail on an aimless journey, for the purpose of a filing deadline would be just as well served by nearly any date a court might choose as by the date Congress has in fact set out in the statute. * * * Faced with the inherent arbitrariness of filing deadlines, we must, at least in a civil case, apply by its terms the date fixed by the statute." (Citations omitted). *Id.* at ——, 105 S.Ct. at 1792, 85 L.Ed.2d at 75. The rationale is simply inapplicable to any defect besides an untimely filing.

■ The requirement that all owners with an interest in the claims be identified in the requisite documents is not a part of the federal statute, but is an item of supplemental information requested by the Department of Interior in its regulations. *See* 43 C.F.R. § 3833.1–2(c) (1979). The regulation, which arguably required automatic abandonment of the claims of miners who failed to provide this supplemental information, immediately came under attack. The Tenth Circuit Court of Appeals held that while it was within the Secretary of Interior's discretion to require the additional information, failure to file information required by the regulations, but not by the statute, could not be deemed an automatic abandonment of the claim. *Topaz Beryllium Co. v. United States*, 649 F.2d 775, 778 (1981). We agree and conclude that failure to specify Goldfield I's shareholders or Nichols as the owners of the claims was not a defect requiring a finding that the claims had been forfeited as a *matter of law*. Accordingly Hand cannot base any of his claims on the alleged failure of Goldfield I to comply with the FLPMA filing requirements.

## THE EIGHT CLAIMS LOCATED ON LAND WITHDRAWN FROM MINERAL ENTRY

Hand argues next that even if Goldfield I complied with FLPMA, several of the claims were invalid for other reasons. Of the fifteen unpatented mining claims at issue in this action, eight were originally located between 1919 and 1922, when the land on which they were situated was withdrawn from mineral entry. The eight claims were the Indian Nos. 1 through 6, the Mother Hubbard No. 2 and the Lawrence. Although the land was subsequently reopened for entry in 1939, neither Goldfield I nor its predecessors in interest ever attempted to relocate the claims after the reopening. In 1960 the president of Goldfield I was informed by Harvey Smith, a mining engineer hired by Goldfield I, that these eight claims were invalid. Still, no action was taken to remedy the defect, although Goldfield I apparently continued to perform its annual assessment work on the eight claims.

Hand entered the property and relocated the claims on July 27, 1981. No one was present on the property at that time and he averred in his affidavit that all of the claims appeared to him to be idle and unoccupied. Few of the original corner stakes remained in place. Hand posted location notices near the centers of the claims, recorded the notices and made the proper state. and federal filings, and thereafter commenced mining activities. On September 28, 1981, Hand re-posted the claims at their corners to comply with A.R.S. § 27–202 and amended the location notices.

■ The trial court ruled that Hand had no interest in the eight claims, but did not set forth the basis for its holding. Hand argues on appeal that the court erred because the original locations were void *ab initio* and his locations in 1981 were the first valid locations. Although the mining law of 1872 permits citizens to enter public lands in search of minerals, a party can acquire rights only in the manner set out by Congress. *Bowen v. Chemi-Cote Perlite Corp.*, 102 Ariz. 423, 432 P.2d 435 (1967). To be valid, a claim must be filed upon land open and subject to entry at the time the location is made. *Bagg v. New*

*Jersey Loan Co.,* 88 Ariz. 182, 354 P.2d 40 (1960). Mining locations on land withdrawn from entry are void *ab initio.* *Belk v. Meagher,* 104 U.S. (14 Otto) 279, 26 L.Ed. 735 (1881). It is well established that neither subsequent mining activities nor the performance of assessment work after land is reopened can revive a location which is initially attempted on withdrawn land. Goldfield I's original location of these eight claims was invalid and remained invalid during all of the years that Goldfield I remained in possession.

Goldfield II concedes that the locations of these eight claims were invalid, but contends that because it was in actual possession of the claims when Hand entered and relocated them, its rights were superior to those of Hand. It also contends that Hand's locations were defective.

■■■■ Goldfield's arguments relating to its alleged possession of these claims at the time Hand entered and relocated them appear to be based on the doctrine of *pedis possessio.* That doctrine, however, normally only governs rights prior to discovery of valuable minerals while a party is still prospecting. It protects the prospector from intervention by another prospector, but only so long as he remains in actual possession of the claim and is diligently searching for minerals. *Geomet Exploration v. Lucky Mc Uranium Corp.,* 124 Ariz. 55, 601 P.2d 1339 (1979). Goldfield has cited no authority which would extend the doctrine of *pedis possessio* so as to give possessory rights to an occupier of unpatented mineral land under the circumstances reflected in the record in this case. Nevertheless, even if we assume 'that the doctrine of *pedis possessio* could be extended so as to give post-discovery possessory rights to a party in possession some 60 years after the initial entry,[1] the record fails to benefit Goldfield in that regard. The rights of an occupant of an unpatented mining claim under the *pedis possessio* doctrine are dependent upon the occupant's

*actual* possession at the time of the entry of the junior claimant. These possessory rights are substantially less than the exclusive possessory rights given to the owner of a valid unpatented mining claim pending timely performance by the owner of annual assessment work. When the possessory rights are dependent solely on *pedis possessio,* if the first possessor relaxes occupancy, another may enter peacefully and in good faith and perfect a valid location. *Geomet, supra.*

Goldfield II argues that Hand acted in bad faith by entering property he knew was in Goldfield II's actual possession, relying on *Bagg v. New Jersey Loan Co., supra.* In *Bagg,* the Arizona Supreme Court stated that a person who enters a claim, knowing that a prior locator is in possession and has located the claim, does so in bad faith and cannot gain possession merely by proving technical defects in the prior locator's right to possession. *Bagg* was impliedly overruled by the Arizona Supreme Court's recent opinion in *Geomet, supra.* In *Geomet* the court held that mere knowledge of a previous claim, in and of itself, did not constitute bad faith. Defining good faith as honesty of purpose and absence of intent to defraud, the court found that Geomet had entered Lucky Mc's claim in good faith notwithstanding knowledge that Lucky Mc claimed the site. Geomet entered openly and peaceably when Lucky Mc was not occupying the site, and the court ruled that Lucky Mc's right to possession had been forfeited.

■■■ Goldfield asserts, without any factual support, that it was in actual physical possession of the eight claims, and that Hand knew that it was in possession but attempted to jump its claims, and thus entered in bad faith. Hand's testimony in the order to show cause hearing reveals that he had been on or near the property frequently from January 1, 1981 through July 22, 1981 and was aware that lessees from Goldfield II were working the claims at

---

1. Goldfield has not asserted any adverse possession rights pursuant to federal statutory law as discussed in 2 *American Law of Mining,* 2d Ed., § 33.08[1][a]. Therefore we do not consider whether that doctrine would be applicable in litigation between private parties.

least intermittently during that period. He also observed on the property the occasional presence of a watchman hired by the lessees. However, Harlow E. Sandstead, the lessee, explained that he had ceased mining the claims before Hand's entry because he was negotiating with a proposed investor and had agreed not to remove any additional ore until the deal was consummated. Hand entered at a time when he found the claims idle and unoccupied, believing that Goldfield had legally abandoned the claims by failing to comply with FLPMA filing requirements. Based upon the uncontested facts, we find that Hand entered the claims in good faith, believing them to be abandoned. He employed no subterfuge, but waited until Goldfield Mines had relaxed possession before entering peaceably. While it is evident that the lessees intended to continue working the claims and performed the annual assessment work required to maintain valid locations, the plain fact is that there were no valid locations, and thus no right to exclusive possession. Goldfield's only right was that afforded by *pedis possessio*. Goldfield did not have the right to relax possession while it negotiated with investors. Since Goldfield Mines has not presented evidence that it was in actual physical possession of the eight claims at the time Hand entered, we conclude that Hand's entry was valid as a matter of law.[2]

## THE ALLEGED DEFECTS IN HAND'S POSTING OF LOCATION NOTICES

■ Goldfield II argues that notwithstanding the fact that its original locations were void, Hand's locations in 1981 were defective and therefore Goldfield II's own subsequent locations were the first valid locations. Hand admitted that on July 27, 1981 he posted his location notices at the centers of the claims. Although there is some inconsistency in its terms, it appears that A.R.S. § 27–202 now requires that a locator post his location notice at a corner of each claim. The inconsistency results from § 27–202(A)'s requirement that a location notice be posted in a monument "at one corner" of the claim, while subsection (A)(4) requires the location notice to state "the length and width of the claim in feet and the distance in feet from the location monument to each end of the claim." This requirement is obviously inconsistent with a corner placement of the location monument. As previously indicated, Hand returned to the claims on September 28, 1981, approximately two months later and correctly posted an amended location notice at the corner of each claim.

■ Goldfield admits that at the time it attempted to relocate the eight claims on September 7, 1981, it had full knowledge of Hand's location notices posted at the centers of the claims and that it was not misled in any way by such posting. In view of the inconsistencies relating to posting contained in the provisions of A.R.S. § 27–202, and the fact that Goldfield was not misled, we hold that Hand acquired valid possessory rights as against Goldfield pursuant to his relocation of the eight claims. *See Cole v. Ralph*, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567 (1920); *Smart v. Staunton*, 29 Ariz. 1, 239 P. 514 (1925). Additionally, and perhaps more importantly, we hold that Goldfield II could not acquire any rights against Hand by reason of its attempted relocations of September 7, 1981 and December 6, 1981 (through Gary Nichols) because its entry into possession of the claims pursuant to court order constituted a wrongful interference with Hand's peaceable possession of said claims. Such an entry is analogous to forceable entry, and no superior rights can result therefrom as against the party previously in possession. *See Adams v. Benedict*, 64 N.M. 234, 327 P.2d 308 (1958); *cf. Erhardt v. Boaro*, 113 U.S. 527, 5 S.Ct. 560, 28 L.Ed. 1113 (1885) (a subsequent locator who by his action prevents a prior locator

**2.** Goldfield II was required to show actual possession as to each claim separately, on a claim-by-claim basis. No attempt was made to do this. *See Geomet, supra; American Law of Mining*, § 34.05[2].

from perfecting his location cannot thereby defeat the rights of the prior locator).

Because Hand's entry into possession of the eight claims was made peaceably and in good faith, and his subsequent location of these eight claims was valid as against Goldfield II as a matter of law, we hold that the trial judge erred in not granting summary judgment in his favor on those claims.

## THE EFFECT OF THE MISTAKEN RECORDING

We turn finally to the three claims that were mistakenly recorded in the wrong county. The Tom Thumb, Mammoth No. 3, and Annex claims were located in 1893. Arizona statutes at that time, just as now, required recordation of the location notices within a specified period of time in the county where the claims were situated. The claims were near the county line and the location notices were mistakenly recorded in Maricopa County rather than in Pinal County. The location notices were re-recorded in Pinal County several years later in order to correct the mistake, but by then the land had been withdrawn from mineral entry. Again, Hand argues that his 1981 locations were the first valid locations of these claims. However, unlike the eight claims improperly located on land withdrawn from entry at the time of the initial location, we hold that these claims were not·void. The requirement that location notices be recorded in a state office is not a requirement imposed by the federal mining law of 1872, although such a requirement is generally imposed by state law. Notwithstanding the existence of Arizona statutory language seemingly requiring a contrary result, the Arizona Supreme Court has held that the failure to record location notices within the time fixed by statute does not render the locations invalid, except as to adverse rights acquired before the late recording. *See Perley v. Goar*, 22 Ariz. 146, 195 P. 532 (1921). Here, the location notices were filed in the proper county long prior to Hand's attempt to acquire adverse rights in 1981. Addi-

tionally, since the failure to timely record did not render the initial location of the claims invalid, we reject Hand's contention that the subsequent withdrawal of the land from mineral entry nullified the valid rights previously acquired by Goldfield's predecessor in interest. We conclude that the trial judge correctly determined that Hand acquired no rights in these three claims.

## THE REMAINING FOUR CLAIMS

Appellant Hand's assertion of rights in the remaining four claims (the Mammoth No. 2, the Black Queen, the Mother Hubbard and the Black King) is based solely on the contention that these claims were abandoned due to the alleged failure of Goldfield I to timely comply with the FLPMA filing requirements. We have previously rejected Hand's argument in that regard. Accordingly, Hand has not established a valid basis for attempted relocation of these four claims.

## CONCLUSION

In summary, we hold that the filing by Goldfield I with the Bureau of Land Management was timely and effective and there was no automatic abandonment of any of the fifteen claims. The eight locations made by Goldfield I's predecessors while the land was withdrawn from mineral entry were void *ab initio* and Hand's locations of these claims in 1981 was valid as against Goldfield II. We reverse the trial court's summary judgment that Hand had no interest in these claims and direct that summary judgment be entered in his favor with regard to the Indian Nos. 1 through 6, Mother Hubbard No. 2 and Lawrence claims. Hand did not establish a right to ownership of the remaining claims. We are unable to affirm summary judgment in favor of Goldfield II in its request for an injunction preventing Hand from entering or possessing these claims, however, because it is unclear that the plaintiff, Goldfield II, has standing to assert ownership rights in these claims. Accordingly, we remand for a determination of that issue.

If Goldfield II is the owner or may be deemed to represent the actual owners, then the trial court may enter judgment in Goldfield II's favor on the remaining seven claims.

Each party shall bear its own attorney's fees on appeal.

MEYERSON, P.J., and GRANT, J., concur.