716 P.2d 433

**UNITED BANK OF ARIZONA, an Arizona banking corporation, Plaintiff-Appellee,**

v.

**SUN VALLEY DOOR & SUPPLY, INC., an Arizona corporation; Boise Cascade Corporation, a corporation, Defendants-Appellants.**

**1 CA–CIV 8030.**

Court of Appeals of Arizona, Division 1, Department B.

March 6, 1986.

Carson, Messinger, Elliott, Laughlin & Ragan by Lee R. Perry, Evan R. Laughlin, Phoenix, for plaintiff-appellee.

Harrison & Lerch, P.C. by Mark I. Harrison, Stephen M. Dichter, Robert T. Kennedy, Leesa E. Berens, Phoenix, for defendant-appellant Boise Cascade Corp.

Duane W. Bolze, Phoenix, for defendant-appellant Sun Valley Door & Supply, Inc.

### OPINION

CONTRERAS, Judge.

This is an appeal from the granting of summary judgment and a decree of foreclosure in favor of the plaintiff-appellee United Bank of Arizona (United Bank). The issue we must decide is whether and to what extent an involuntarily dissolved corporation may wind up its affairs pursuant to A.R.S. § 10–105. Because we conclude that the actions of the involuntarily dissolved corporation fall within the meaning and intent of A.R.S. § 10–105, we affirm the granting of summary judgment.

### FACTS

On May 1, 1979, plaintiff-appellee United Bank extended a $300,000 line of credit to Brecheisen Wholesale, Inc. (Brecheisen), secured by Brecheisen's accounts receivable, inventory, and the personal guarantee of

John E. Brecheisen. The line of credit was renewed on May 1, 1980, with the last advance occurring on December 12, 1980. On February 10, 1981, Brecheisen's corporate charter was revoked pursuant to A.R.S. § 10–094(1). On May 1, 1981, the line of credit was again renewed. A final renewal occurred on October 30, 1981. On June 17, 1982, Brecheisen executed a deed of trust in favor of United Bank to secure the aforementioned line of credit indebtedness. United Bank recorded the deed of trust on June 28, 1982.

On June 29, 1982, defendant appellant Boise Cascade Corporation (Boise Cascade), recorded a transcript of judgment based upon a June 1, 1982, breach of contract suit against Brecheisen filed earlier that year. Finally, on June 30, 1982, defendant appellant Sun Valley Door & Supply, Inc. (Sun Valley), recorded a separate judgment it had previously obtained against Brecheisen. Seven days later, on July 7, 1982, Brecheisen made its last payment to United Bank on the line of credit. The remaining balance owed was substantial. When no further payments were received, United Bank filed a complaint to foreclose on the deed of trust. In its minute entry of October 26, 1983, the trial court granted United Bank's motion for summary judgment. On September 25, 1984, a Formal Written Judgment and Decree of Foreclosure was entered.

### A.R.S. § 10–105

■ In granting United Bank's motion for summary judgment, the trial judge stated in his October 26, 1983, minute entry:

> The liability issue involved ... concerns an interpretation of A.R.S. 10–105. The Court holds that A.R.S. 10–105 permits a dissolved corporation to perform any act which an existing corporation might do which would be a reasonable act of settling a claim of indebtedness against it. The Court's ruling in this case is based upon the following assumptions: That the entire debt secured by the deed of trust which the Plaintiff

seeks to foreclose in Count II of its Complaint was incurred by the Plaintiff prior to its charter being revoked. The debt having been established prior to dissolution, the corporation can reasonably act to satisfy that debt in any manner that it could have acted had its charter not been revoked.

A.R.S. § 10–105 provides that:

> The dissolution of a corporation either by the issuance of a certificate of dissolution by the commission, by a judgment of court when the court has not liquidated the assets and business of the corporation as provided in this chapter, by an order of the commission revoking the certificate of incorporation under the provisions of § 10–095 or by expiration of its period of duration, *shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, or any right or claim existing, or any liability incurred, prior to such dissolution.* Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim. (Emphasis added.)

Appellant Boise Cascade argues that the trial court incorrectly interpreted A.R.S. § 10–105. Specifically, it claims that this section does not provide authority for a corporation to perform "any act" in settling a claim of indebtedness against it, but instead only authorizes *lawsuits* by or against the dissolved corporation for purposes of preserving remedies. Appellee contends, however, that under the clear language of A.R.S. § 10–105, it was entitled to employ *any* reasonable remedy against Brecheisen to collect Brecheisen's predissolution indebtedness. Specifically, appellee argues that a lawsuit is not the sole "remedy" under the statute since the taking of a deed of trust to secure repayment of a predissolution obligation is, among others, a "remedy" within A.R.S.

§ 10–105. We agree. Nothing in A.R.S. § 10–105 specifically limits the available remedy solely to a lawsuit, nor do we believe that the legislature intended to limit a creditor's available remedies to a suit against the dissolved corporation on a debt when the obligation could reasonably be settled without litigation. *See generally State ex rel. Flournoy v. Mangum*, 113 Ariz. 151, 558 P.2d 1148 (1976). Public policy favors settlement. While the language of the statute permits a lawsuit as a possible remedy, such language is neither mandatory nor exclusive. Other reasonable alternative remedies may be employed short of actual litigation.[1]

■ Appellants next argue that even if the execution of the deed of trust was a "remedy" within the meaning of A.R.S. § 10–105, United Bank is still precluded from recovery under the statute since A.R.S. § 10–105 applies only to "any right or claim existing, or any liability incurred, *prior to such dissolution.*" (Emphasis added.) Applying this language, appellants argue that the May 1, 1981, and October 30, 1981, "renewals" did not "arise prior to ... dissolution" within the meaning of the statute since the purpose of each "renewal" was to pay off and discharge each preceding note. Thus, appellants argue, with each renewal, a "new" debt was created to satisfy an existing liability. Appellee contends that the renewals did not create a new debt but simply extended the original debt given prior to the dissolution. The trial judge found sufficient evidence to support appellee's claim. Based upon our review of the evidence, we agree. Each renewal specifically referred to the *original obligation.* Under these circumstances, no "new debt" was created, nor did the parties ever agree that the renewals would constitute "payment." *See Nemec v. Rollo*, 114 Ariz. 589, 562 P.2d 1087 (App.1977); *Evans v. Colorado Savings Bank*, 41 Ariz. 504, 19 P.2d 1062 (1933). Instead, each

renewal simply operated to extend the term of the *original*, predissolution debt.

### *A.R.S. §§ 10–095 AND 10–087*

■ Appellants next argue that the trial court ignored the purpose of A.R.S. § 10–095 in construing the language of A.R.S. § 10–105 to include any reasonable remedy in addition to a lawsuit. Specifically, appellants claim that the language of A.R.S. § 10–095(D) that "[u]pon the issuance of [a] certificate of revocation, the existence of such corporation shall terminate, ..." clearly renders all corporate acts after revocation void. *Greenwood v. Union Freight Co.*, 15 Otto 13, 105 U.S. 13, 26 L.Ed. 961 (1881); *New Hampshire Fire Ins. Co. v. Virgil & Franks Locker Service, Inc.*, 302 F.2d 780 (8th Cir.1962); *Houston v. Utah Lake Land, Water & Power Co.*, 55 Utah 393, 187 P. 174 (1919). Moreover, they claim that since there are no "winding up" provisions under the involuntary dissolution article comparable to those found in the voluntary dissolution provisions of A.R.S. §§ 10–086 and 10–087, there were no post revocation powers to act. Finally, appellants argue that even if an involuntarily dissolved corporation may "wind up" under A.R.S. § 10–087(A)(3), the execution of the third and fourth notes (the May 1, 1981, and October 30, 1981, renewals) and the June 17, 1982, deed of trust were ultra vires and void since a "new" debt was created at the same time an "old" debt was retired, such that nothing was "wound up" within the meaning of the statute. Appellee argues simply that the deed of trust was a valid act of winding up Brecheisen's affairs under A.R.S. § 10–105. *Weltsch v. O'Brien*, 25 Ariz.App. 50, 540 P.2d 1269 (1975).

In *Weltsch*, the subject corporation, through its attorney, filed a judgment renewal affidavit against appellees approximately one month after the corporation's

---

1. Under the statute, this is true whether the remedy is available to and asserted by the dissolved corporation either to enforce a right or claim it holds against another or (as in the present case) to settle any liability it has in

curred, or to the creditor of the dissolved corporation to enforce a claim or right or collect on a liability owed by such corporation to the creditor.

charter had been revoked. A year later, the corporation caused a writ of garnishment to be issued and served under the renewed judgment. In a suit for wrongful garnishment, this court reversed judgment in favor of the O'Briens, stating:

> We further do not find the fact that the Arizona Corporation Commission revoked Palmer Industries, Inc.'s license to do business in the state of Arizona prior to the filing of the renewal affidavit to be material. Under A.R.S. § 10–364, a corporation's existence continues even after its dissolution for the purposes of winding up its affairs. Moreover, under A.R.S. § 10–365(B) (1956):

> > "No action or proceeding in which a dissolved corporation is a party at the time of dissolution shall abate or be discontinued by reason of dissolution"

> We therefore hold that the Palmer Industries, Inc.—O'Brien judgment was properly renewed pursuant to A.R.S. § 12–1611 et seq. on May 21, 1971. It was therefore a valid existing judgment subject to collection by way of garnishment on August 10, 1972, at the time the writ in this matter was issued and executed. It follows then that issuance of the writ of garnishment against Plaintiff O'Brien's employer was not wrongful and did not give rise to a cause of action for a wrongful garnishment.

Boise Cascade attempts to distinguish *Weltsch* from the case at bar on the basis that *Weltsch* involved the renewal of a *judgment* entered prior to revocation, while this case involves the execution of new debt and a deed of trust after revocation. We have previously concluded that a lawsuit (resulting in a formal judgment as in *Weltsch* ) is not the sole remedy under A.R.S. § 10–105, and that the execution of the renewals did not create "new debt" within the meaning of that section. Thus, we reaffirm the principle enunciated in *Weltsch* since appellants' distinctions make no substantive difference to the application of the statute. While we agree that upon the issuance of a certificate of revocation the corporate entity ceases to exist, we cannot agree that this terminates a dis-

solved corporation's limited statutory rights to "wind up" its affairs even where the dissolution is otherwise involuntary. *See* A.R.S. § 10–087 and A.R.S. § 10–105.

■ Appellants also argue that the 1976 amendments to former A.R.S. § 10–365 expressly abrogate the continued existence of an involuntarily dissolved corporation for purposes of winding up its affairs. *See* A.R.S. § 10–105. Again, we disagree. A.R.S. §§ 10–362, 10–364 to 10–366 were replaced in 1976 by current A.R.S. § 10–087. A.R.S. § 10–105 was added as a new section under the same amendments. While former A.R.S. § 10–365 expressly provided that a dissolved corporation "shall ... continue in existence for purposes of filing a civil action`....`", the scope of relief was clearly broadened under the 1976 amendments. No longer is the dissolved corporation limited to "filing a civil action." Rather, under the revised scheme, it may employ any reasonable "remedy" to facilitate the limited statutory purposes during the winding up process. *See* A.R.S. §§ 10–087 and 10–105. That these sections no longer refer to the corporation as "continu[ing] in existence during this time" is irrelevant since the legislature has explicitly "continued" the existence of the corporation for the limited purposes outlined in A.R.S. §§ 10–087 and 10–105. We find further support for this result in *Goldfield Mines, Inc. v. Hand*, 147 Ariz. 498, 711 P.2d 637 (Ariz.App.1985), where this court concluded that A.R.S. § 10–105, like former A.R.S. § 10–364, contemplates situations where it is necessary for an involuntarily dissolved corporation to take post-dissolution action in the course of winding up its affairs:

> In our opinion the clear language of A.R.S. § 10–105 gave the directors and officers of Goldfield I the power to make the FLPMA filings in the exercise of their authority to take such action as might be appropriate to protect the rights of the corporation.

*Id.* 711 P.2d at 642.

Thus, there exists an implicit nexus between A.R.S. § 10–087(A)(3) and A.R.S.

§ 10–105 as they relate to the dissolved corporation. Again, that the former does not on its face refer to involuntarily dissolved corporations is irrelevant since the latter provides ample authority for the involuntarily dissolved corporation to assert the "remedies" necessary to facilitate such dissolution. *See Weltsch, supra.* As in *Weltsch,* Brecheisen's corporate powers remained unimpaired to the extent that it exercised its limited statutory rights after revocation. Since it is within the power of a dissolved corporation to give a note for a debt which existed before the dissolution, we conclude that the execution of the deed of trust by Brecheisen in favor of United Bank was proper. *See* 16A *Fletcher Cyclopedia of the Law of Private Corporations,* § 8172 (1979).[2]

## ATTORNEY'S FEES

■ United Bank requests attorney's fees on appeal pursuant to A.R.S. § 12–341.01 and Rule 21, Arizona Rules of Civil Appellate Procedure and also requests that such award be made jointly and severally against appellant's Boise Cascade and Sun Valley. A.R.S. § 12–341.01 provides for attorney's fees "[i]n any contested action arising out of contact, express or implied...." This statute applies to appeals as well as trials. *Wenk v. Horizon Moving & Storage Co.,* 131 Ariz. 131, 639 P.2d 321 (1982). Furthermore " 'arising out of contract' describe[s] an action in which a contract was a factor causing the dispute." *ASH, Inc. v. Mesa Unified School District No. 4,* 138 Ariz. 190, 673 P.2d 934 (App. 1983). This action was brought to enforce the promissory note and to foreclose on the deed of trust executed by Brecheisen in favor of United Bank. Boise Cascade and

Sun Valley sought to establish their invalidity. We conclude, and it is not disputed by appellants, that this was an action arising out of a contract as contemplated by A.R.S. § 12–341.01. Having successfully prosecuted this claim, appellee may recover its attorney's fees on appeal by complying with Rule 21, Arizona Rules of Civil Appellant Procedure, and our decision in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983). The award will be jointly and several against appellants Boise Cascade and Sun Valley.

Accordingly, the order of the trial court granting appellees' motion for summary judgment and the decree of foreclosure are affirmed.

JACOBSON, P.J., concurs.

CORCORAN, Judge, dissenting in part.

Although I agree with this opinion's disposition on the merits, I respectfully dissent from the award of attorney's fees.

I do not believe that this action arises out of the promissory note and deed of trust. The contest arises out of whether Brecheisen Wholesale and John E. Brecheisen, who had personally guaranteed the corporate obligation to United Bank, could give a preference to United Bank through the note and deed of trust while Sun Valley and Cascade were pursuing Brecheisen Wholesale through the courts to judgment. To my mind, this kind of dispute is not one which can be said to arise out of the promissory note and deed of trust. It is simply a question of priority.

In any event, assuming the majority is correct on this point, I believe this court should exercise its discretion to deny attor-

---

2. Appellants raise several additional issues which we summarily deny. First, Sun Valley claims a lack of consideration for the execution of the deed of trust, and that such transfer constituted additional security "to secure an antecedent debt." Neither issue is supported by argument or authority and as such, will not be considered on review. *See Paros v. Hoemako Hospital,* 140 Ariz. 335, 681 P.2d 918 (App.1984).

Second, Boise Cascade argues that even if the execution of the third and fourth renewals and the deed of trust were acts of "winding up" within the meaning of the statutes, a question of fact remains as to whether Brecheisen actually intended as much. While intent is, generally, a question of fact, the statute requires only that the act fall within the contemplated remedies. We have concluded that it does. Furthermore, there is no evidence that the deed of trust was executed for any purpose other than that alleged by appellee.

ney's fees to United Bank. Sun Valley and Cascade have suffered enough by virtue of the preference given to United Bank.