## In re PRISM PROPERTIES, INC., Debtor.

### Bankruptcy No. 95–10673–PHX–CGC.

United States Bankruptcy Court,
D. Arizona.

Aug. 2, 1996.

---

Stanley M. Hammerman, Robert R. Hall, Hammerman & Hultgren, P.C., Phoenix, Arizona, for Movant.

Gary J. Jaburg, Michael J. McGivern, Jaburg & Wilk, P.C., Phoenix, Arizona, for Debtor.

Barbara Lee Caldwell, Office of the Maricopa County Attorney, Division of County Counsel, Phoenix, Arizona, for Maricopa County.

Barry Becker, Barry Becker, P.C., Phoenix, Arizona, for PLM Tax Certificate Program and TRC Ventures.

Leonard McDonald, Bosco, Bosco & Vakula, P.C., Phoenix, Arizona, for Southbay Christian Center.

Thomas Recine, Palo Alto, California.

Brian R. Winski, Huey & Winski, Phoenix, Arizona, for Roliz, Inc.

## MEMORANDUM DECISION RE MOTION TO DISMISS

### (Under Advisement Ruling)

CHARLES G. CASE, II, Bankruptcy Judge.

### I. INTRODUCTION.

Prism Properties, Inc. ("Debtor"), filed its Chapter 11 petition on November 20, 1995. The Debtor filed its plan and disclosure statement on March 19, 1996; although preliminary hearings have been held, the disclosure statement has yet to be approved. On May 22, 1996, Creditor Maricopa County filed a Motion to Dismiss or, in the Alternative, to Convert to Chapter 7 (the "Motion to Dismiss or Convert"), and Debtor filed its initial response on May 23, 1996. Other creditors have joined in the Motion to Dismiss or Convert, including Roliz, Inc. and Southbay Christian Center.

Prior to the filing of its Chapter 11 petition, Debtor's corporate charter was revoked by the Arizona Corporation Commission on

September 10, 1990 (the "Revocation Date"). The County argues that this case should be dismissed or, at the least, converted because Debtor ceased to exist on the Revocation Date and its assets devolved to its shareholders. Debtor contends that the revocation of its corporate charter does not preclude it from being a debtor in a liquidating Chapter 11 proceeding.

## II. DISCUSSION.

### A. *The Applicable Authorities*

The issue before the Court is whether an Arizona corporation that has had its corporate charter revoked by the Arizona Corporation Commission is an eligible debtor under Chapter 11 of the Bankruptcy Code. For the reasons discussed below, the Court holds that a revoked corporation may be an eligible debtor but it is limited to liquidation, either via a liquidating plan under Chapter 11, or under Chapter 7.

Under the Bankruptcy Code, a "person" is a proper debtor under Chapter 11 and "person" includes a "corporation." *See* 11 U.S.C. §§ 109, 101(41). The definition of a corporation includes an "association having a power or privilege that a private corporation, but not an individual or a partnership, possesses...." 11 U.S.C. § 101(9). Whether a debtor has such a power or privilege, and therefore a debtor's status as a corporation, is a matter of state law.

A.R.S. § 10–1421 [1] provides, in pertinent part:

C. A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under section 10–1405....

Section 10–1405 provides, in pertinent part:

A. A dissolved corporation continues its corporate existence but shall not carry on any business except that business appropriate to wind up and liquidate its business and affairs, including:

1. Collecting its assets.

2. Disposing of its properties that will not be distributed in kind to its shareholders.

3. Discharging or making provisions for discharging its liabilities.

4. Distributing its remaining property among its shareholders according to their interests.

5. Doing every other act necessary to wind up and liquidate its business and affairs.

B. Dissolution of a corporation does not:

1. Transfer title to the corporation's property.

.    .    .    .    .

This section clearly gives a corporation with a revoked corporate charter certain corporate powers and privileges, i.e. the right to continue to pursue rights and claims and deal with liabilities incurred prior to the time of revocation, but those powers and privileges are strictly proscribed. The Arizona Court of Appeals has twice addressed the continuing rights of a corporation that has been dissolved under Section 10–1405's predecessor statutes. In *Goldfield Mines, Inc. v. Darrell G. Hand,* 147 Ariz. 498, 711 P.2d 637 (Ct.App.1985), the issue was whether, after the expiration of the period of existence set forth in a corporation's charter, the corporation could file a federal mining claim. The defendant in *Goldfield* argued that the corporation could only act to wind up its affairs and could not file a valid mining claim. The *Goldfield* court reasoned, however, that the clear language of the statute gave the directors and officers the authority to take corporate action and file a mining claim to protect rights that existed on the date of the expiration of the corporate charter. *Id.,* 711 P.2d at 642. Thus, even though the corporation had technically ceased to exist, it was permitted to act as a corporation to preserve rights and claims in existence prior to the expiration of its corporation charter. *Id.*

In *United Bank of Arizona v. Sun Valley Door & Supply, Inc.,* 149 Ariz. 64, 716 P.2d 433 (Ct.App.1986), the corporate charter was revoked, and thereafter the corporation had

---

1. This statute was effective January 1, 1996. The prior statutes, A.R.S. §§ 10–095 and 10–105, were not materially different for purposes of this analysis.

renewed its line of credit with its bank several times and also executed a deed of trust in favor of the bank. When the bank sought to foreclose on its deed of trust, competing judgment lien creditors argued that under A.R.S. § 10–105, the post-revocation renewal of the line of credit and execution of the deed of trust were invalid acts and therefore void. The court of appeals framed the issue as "whether and to what extent an involuntarily dissolved corporation may wind up its affairs pursuant to A.R.S. § 10–105." *Id.*, 716 P.2d at 434. The court of appeals recited the lower court's reasoning as follows:

A.R.S. § 10–105 permits a dissolved corporation to perform any act which an existing corporation might do which would be a reasonable act of settling a claim of indebtedness against it.

*Id.* The court of appeals agreed and concluded that the actions of the dissolved corporation, in renewing its line of credit and executing a deed of trust in favor of the bank, *after* its dissolution, related back to the original, pre-dissolution debt, and were reasonable acts relating to the settling of such claim and therefore valid, enforceable corporate acts. *Id.*, 716 P.2d at 436–37. Under the reasoning of the two decisions by the Arizona Court of Appeals, it is clear that A.R.S. § 10–1405 provides authority for a corporation whose charter has been revoked to continue to act as a corporation for the purpose of protecting and preserving its assets and claims and settling its debts. *United Bank of Arizona v. Sun Valley Door & Supply, Inc.*, 149 Ariz. 64, 716 P.2d 433 (Ct. App.1986); *Goldfield Mines, Inc. v. Darrell G. Hand*, 147 Ariz. 498, 711 P.2d 637 (Ct. App.1985).

The County cites the Court to *In re Vermont Fiberglass, Inc.*, 38 B.R. 151 (Bankr.D.Vermont 1984). The *Vermont Fiberglass* court looked to state law to determine whether a dissolved corporation may obtain relief under Chapter 11 of the Bankruptcy Code. *Id.*, 38 B.R. at 153. In *Vermont Fiberglass*, the debtor was attempting to reorganize, not liquidate, under Chapter 11. The Vermont state statute at issue was similar to the predecessor to A.R.S. § 10–

1405. In granting the motion to convert, the *Vermont Fiberglass* court concluded that the debtor, whose corporate charter had been revoked for failure to file an annual report, was not a proper debtor to reorganize under Chapter 11. In so holding, however, the *Vermont Fiberglass* court explained that the corporation *did* have the authority "to wind up its affairs and liquidate, and to use a court of competent jurisdiction within the state, *such as this court* [the bankruptcy court], for that purpose." *Id.*, 38 B.R. at 154 (emphasis added). The *Vermont Fiberglass* court was not opposed to liquidation of the corporation under Chapter 11, but found that unsecured creditors were better served by conversion to Chapter 7. *Id.*

There are two opinions by the Second Circuit on this issue. *In re Cedar Tide Corporation*, 859 F.2d 1127 (2nd Cir.1988); *In re Martin–Trigona*, 760 F.2d 1334 (2nd Cir. 1985). In the *Martin–Trigona* case, the bankruptcy court approved a liquidating plan that provided for the sale of all assets and the distribution for the payment of all claims. Only after the sale and distribution was approved, did the sole shareholder of the Debtor claim that all of the corporate bankruptcy proceedings were a nullity because the corporate charter had been revoked prior to the voluntary bankruptcy filing. *Martin–Trigona*, 760 F.2d at 1342. The Second Circuit disagreed and concluded that forfeiture by the Connecticut Secretary of State, which effected a dissolution of the debtor, did not deprive the bankruptcy court of jurisdiction over the voluntary Chapter 11 case and accordingly the confirmed liquidating plan would not be overturned. *Id.*

In the *Cedar Tide* case, the corporate debtor was dissolved by the State of New York for nonpayment of franchise taxes. The *Cedar Tide* court held that the debtor could reorganize or liquidate under Chapter 11. However, that corporate debtor had been officially reinstated under state law within six months of its bankruptcy filing. The Debtor here does not have that option because it missed the six month window provided for reinstatement under the applicable

state statute.[2] Therefore, the *Cedar Tide* holding that a lapsed corporation may *reorganize* is inapposite.

### B. *The Resulting Conclusion*

■ A corporation is a creature of state law and accordingly exists only under state law. The Bankruptcy Court is not empowered to continue a corporation's existence through reorganization as a going concern when state law dictates that it no longer exists. It is undisputed in the instant case that the Debtor's corporate charter was revoked by the Arizona Corporation Commission on the Revocation Date, approximately 5 years prior to the filing of the Debtor's Chapter 11 petition. Therefore, under state law the Debtor technically ceased to exist on the Revocation Date. State law provides, however, that after revocation a corporation may continue to act to preserve and pursue assets and claims and settle liabilities, and accordingly the Debtor may liquidate under the Bankruptcy Code, either via a liquidating Chapter 11 plan or under Chapter 7. The question that remains, therefore, is whether the plan proposed by the Debtor can fairly be characterized as proposing a liquidation within the parameters of A.R.S. § 10–1405.

### C. *The Debtor's Plan*

■ The Debtor owns part of a multi-tenant shopping center in west Phoenix. The primary tenant is a nightclub, known as Toolie's, which is operated by Sunshine Investment Company, Inc. Both the debtor and Sunshine are owned by William Bachand. Sunshine occupied its premises pursuant to a lease with the Debtor which expired by its own terms prior the commencement of this case. Since the filing, Sunshine has continued to occupy and use the premises even though there is no lease in existence and no rent has been paid. Debtor has now filed a motion to approve a new lease between itself and Sunshine which, by its very nature, is not an arm's-length transaction. That motion is pending.

The property is highly over-encumbered. There are unpaid property taxes of over $300,000 and consensual liens of at least another $1,000,000. The Debtor estimates the value of the property at $550,000 and proposes to cram down the secured claims to that amount. Unsecured creditors will receive nothing. The plan contemplates the injection of $100,000 in new money with continued ownership, at least in part, by Mr. Bachand and continuing management by him also.

Although Debtor has characterized this plan as "liquidating" (since it contemplates transfer of the property to a new entity, albeit with common ownership with Debtor), it clearly is not. This is a traditional single asset reorganization plan with all the traditional issues—whether there is a consenting impaired class, the impact of 11 U.S.C. § 1111(b), feasibility, and whether the proposed cash infusion defeats the absolute priority rule.

Debtor cannot circumvent the strictures of state corporate law through this mechanism. The case must be either dismissed or converted. The clear creditor preference, as expressed at the hearing, is for dismissal and there is no overriding reason to convert. Therefore, the motion to dismiss will be granted. Counsel for the County is to submit a form of order.

So ordered.

---

**2.** Former A.R.S. § 10–095 provided for a six-month reinstatement period; present section 10–

1422 provides for three years. The debtor is out of time regardless of which standard is applied.